**FILED**

NOV - 2 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIGADIER GENERAL JOHN G. BAKER, UNITED STATES MARINE CORPS,<br><br>*Petitioner*,<br><br>v.<br><br>COLONEL VANCE SPATH, UNITED STATES AIR FORCE, In his Official Capacity, and<br><br>JAMES MATTIS, SECRETARY OF DEFENSE, In his Official Capacity,<br><br>*Respondents*. | Case: 1:17-cv-02311<br>Assigned To : Lamberth, Royce C.<br>Assign. Date : 11/2/2017<br>Description: Habeas Corpus<br><br>Related to No. 08-Civ-1207 (RCL)<br><br>*before*<br>Judge Royce C. Lamberth |

## BRIGADIER GENERAL JOHN G. BAKER'S PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR EMERGENCY EXPEDITED CONSIDERATION

For the reasons set forth in the accompanying Memorandum of Law, Petitioner, Brigadier General John G. Baker, respectfully requests this Court to issue a writ of habeas corpus forthwith and order his immediate release from custody.

Respectfully Submitted:

*/s/ Addy R. Schmitt*

Barry J. Pollack (D.C. Bar #434513)
Addy R. Schmitt (D.C. Bar #489094)
MILLER & CHEVALIER CHARTERED
900 16th Street, N.W.
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: bpollack@milchev.com
          aschmitt@milchev.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIGADIER GENERAL JOHN G. BAKER, UNITED STATES MARINE CORPS, *Petitioner*, v. COLONEL VANCE SPATH, UNITED STATES AIR FORCE, In his Official Capacity, and JAMES MATTIS, SECRETARY OF DEFENSE, In his Official Capacity, *Respondents*. | CIVIL ACTION (HABEAS CORPUS) No _____ Related to No. 08-Civ-1207 (RCL) *before* Judge Royce C. Lamberth |

**MEMORANDUM OF LAW IN SUPPORT OF
BRIGADIER GENERAL JOHN G. BAKER'S
<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

Petitioner Brigadier General John G. Baker ("General Baker" or "Petitioner") is the Chief Defense Counsel of the Military Commission System. Respondent Colonel Vance Spath is the military judge who is presiding over the Al Nashiri case in the commission system. On November 1, 2017, Judge Spath held General Baker in contempt and ordered him confined for 21 days, effective immediately, and imposed a fine of $1,000. As set forth below, Respondent Spath lacked the legal authority to hold General Baker in contempt or to detain him. General Baker is currently being unlawfully detained and this Court should order his immediate release.

Respondent Spath violated General Baker's due process rights by depriving him of his liberty without giving him any opportunity to be heard. Respondent Spath expressly stated, on the record, "I'm denying you the opportunity to be heard. Thank you. It's a summary proceeding." Respondent Spath also rejected an attempt by General Baker to be heard before the

1

proceeding. That deprived Petitioner of one of the most fundamental aspects of due process – the right to be heard before being deprived of liberty and property.

None of the actions that formed the basis for Respondent Spath's order were contemptuous. General Baker's actions were respectful declinations to take actions that Respondent Spath had no lawful authority to require him to take.

As General Baker would have demonstrated to Respondent Spath had he been given the opportunity to be heard, the plain meaning of the governing statute precludes Judge Spath from unilaterally ordering anyone – and particularly a United States citizen – into confinement. His order that General Baker be confined was not merely without lawful authority, but explicitly proscribed by Congress. Accordingly, General Baker is currently being detained unlawfully. This Honorable Court should, therefore, immediately order Petitioner's release.

**PARTIES**

Petitioner Brigadier General John G. Baker, United States Marine Corps, is the Chief Defense Counsel of the military commission system. He is a United States citizen.

Respondent Colonel Vance Spath, United States Air Force, against whom this action is brought in his official capacity, is the military judge detailed to preside in the capital military commission proceedings of Abd Al Rahim Hussein Al Nashiri. Respondent Spath has the power to reconsider his order that Petitioner be confined. Accordingly, he is appropriately named as a habeas respondent who can free Petitioner from his ongoing unlawful confinement.

Respondent James Mattis, against whom this action is brought only in his official capacity, is the Secretary of Defense. All of the individuals who are involved in the confinement of Petitioner are subject to the direction and control of Respondent Mattis. Respondent Mattis has the power to order those confining Petitioner to release him. Accordingly, he is

2

appropriately named as a habeas respondent who can free Petitioner from his ongoing unlawful confinement.

## JURISDICTION AND VENUE

Article III courts have jurisdiction over § 2241 habeas petitions in which a United States service member is claiming that he is unlawfully detained outside the United States by service members or other government employees under the control of the Department of Defense and this Court is the proper venue for bringing such an action. *See, e.g., Munaf v. Geren*, 553 U.S. 674 (2008); *see also Burns v. Wilson*, 346 U.S. 137, 139 (1953) (plurality opinion) (federal civil courts have jurisdiction over § 2241 petitioners who claim they were wrongly imprisoned and sentenced to death as a result of court-martial proceedings that denied them basic rights guaranteed by the Constitution). A person incarcerated for civil contempt is "in custody" for purposes of invoking habeas jurisdiction under 28 U.S.C. § 2241. *See Fernos-Lopez v. Figarella Lopez*, 929 F.2d 20, 23 (1st Cir. 1991); *Leonard v. Hammond*, 804 F.2d 838, 840 (4th Cir. 1986); *Ridgway v. Baker*, 720 F.2d 1409 (5th Cir. 1983).

## FACTUAL BACKGROUND

This habeas action arises from proceedings collateral to the capital military commission proceedings against Abd Al Rahim Hussein Al Nashiri at Naval Station Guantanamo Bay, Cuba. Military commission procedures are largely governed by regulations called the Rules for Military Commissions (R.M.C.s), which were issued by the Secretary of Defense pursuant to authority delegated by Congress. *See* 10 U.S.C. § 949a.

Petitioner is the Chief Defense Counsel of the military commission system. In that capacity, he has the power to assign (detail) defense counsel in military commission proceedings. *See* Regulation for Trial By Military Commission, ¶ 9-1.a, *available at*

https://www.mc.mil/Portals/0/pdfs/RTMC%20-%20Change%20to%20Rule%209%20-%202016.pdf. Three of Mr. Al Nashiri's civilian counsel applied to General Baker to be excused from the case after receiving advice from a professional responsibility expert that their continued involvement in the case would be unethical. R.M.C. 505(d)(2)(B) provides that after the formation of an attorney-client relationship, "an authority competent to detail such counsel may excuse or change such counsel only: (i) Upon request of the accused or application for withdrawal by such counsel; or (ii) For other good cause shown on the record." R.M.C. 505(d)(2), *available at* https://www.mc.mil/Portals/0/pdfs/2016_Manual_for_Military_Commissions.pdf. Exercising his duties as Chief Defense Counsel of the military commission system, General Baker granted the request by civilian counsel to be excused.

As a result, Al Nashiri was left with a single defense attorney, one who is not learned counsel in capital cases. On the afternoon of October 27, 2017, Respondent Spath issued an order in which he denied a request for abatement in the Al Nashiri case on the basis that the defendant no longer had a learned counsel. While finding the rules governing attorney excusal ambiguous, Respondent Spath concluded that "the Commission is the appropriate authority to determine if good cause is shown on the record to warrant excusal of counsel pursuant to R.M.C. 505(d)(2)(B)." Respondent Spath's October 27 order did not direct Petitioner to do anything.

On the morning of October 31, 2017, Respondent Spath convened a hearing of the military commission in the case of Al Nashiri. After noting that the excused counsel were not present and that he disagreed with Petitioner's finding of good cause to excuse them, Respondent Spath purported to order Petitioner to the witness stand. Trans. at 10037, *available at* http://www.mc.mil/Portals/0/pdfs/alNashiri2/Al%20Nashiri%20II%20(TRANS31Oct2017-

AM).pdf. Petitioner refused to take the stand, stating, "Well, Your Honor, pursuant to Rule 501(b)(1), I am asserting my right to refuse to be a witness in this case." *Id.* at 10039. That rule provides, "A claim of privilege includes, but is not limited to, the assertion by any person of a privilege to . . . (1) Refuse to be a witness." M.C.R.E. 501(b)(1), available at https://www.mc.mil/Portals/0/pdfs/2016_Manual_for_Military_Commissions.pdf. Respondent Spath disagreed that Petitioner had the authority to decline to appear as a witness. *Id.* at 1039-42. The following colloquy between Respondent Spath and Petitioner then occurred:

> CDC [BGen BAKER]: Your Honor, again, under Rule 501(b)(1) I refuse to appear as a witness.
>
> MJ [Col SPATH]: All right. So, I'm ordering you to testify. You are refusing to come up here, take the oath, and testify; is that accurate?
>
> CDC [BGen BAKER]: That is accurate; yes, sir.
>
> MJ [Col SPATH]: All right. I'm also ordering you to rescind the direction you gave when you excused both learned outside -- appointed learned counsel and the two civilians. Are you refusing to comply with that order as well? You excused them; you released them.
>
> CDC [BGen BAKER]: Yes, sir.
>
> MJ [Col SPATH]: I'm ordering you to send them a note saying you are not releasing them. I can't order Mr. Kammen here. I know that. I know you've got two DoD employees that work for you. I know what their government contract says. But that is your choice as their supervisory attorney, and everybody can deal with that, including your supervisor. My question to you is: I'm ordering you to

send them a memo telling them their withdrawal is not approved because you don't have the authority.

CDC [BGen BAKER]: Oh, I'm definitely not going to ----

MJ [Col SPATH]: Okay.

CDC [BGen BAKER]: ---- I am definitely not -- Your Honor, Rule 5-0 -- I understand your ruling. I understand your ruling.

MJ [Col SPATH]: You don't, because you haven't done anything to fix the ruling. How does this normally work? I issue a ruling. You disagree with it -- or you all disagree with it and we go to the appellate court and they tell me I'm right or wrong. They do it every week. And I'm okay with it.

That is the normal process. You interpreted a rule, and now there are two rulings from this commission that tell you you got it wrong.

CDC [BGen BAKER]: Your Honor, if your -- if your order to me is to -- I want to make sure that I understand what – your order to me. If your order to me is, General Baker, you must rescind your action that you took on October 13th ----

MJ [Col SPATH]: Yes.

CDC [BGen BAKER]: ---- whatever the date -- whatever the correct date is, excusing learned counsel and assistant defense counsel, I refuse to follow that order.

MJ [Col SPATH]: And you are also refusing to testify.

CDC [BGen BAKER]: Yes, sir, pursuant to ----

MJ [Col SPATH]: I understand you are citing a rule. I have ordered you to come up here and testify and take the oath.

6

>Okay. We'll talk more tomorrow.

*Id.* at 10042-44.

Respondent Spath subsequently told Petitioner, "I expect you to make arrangements for the two detailed military civilian – or detailed civilian counsel, since you are their supervisor and they're employed by DoD. I expect you to communicate to them the need to get themselves down here posthaste." *Id.* at 10044-45. Petitioner replied, "I understand your order." *Id.* at 10045. Respondent Spath then asked, "Are you going to communicate that to them." *Id.* Petitioner replied, "I need to think about that, Your Honor." *Id.* Respondent Spath replied, "That's fine. Just let me know by 1600. You can send an e-mail – since you are not a party of record, send an email to the staff and let me know if you are communicating it to them or you are not." *Id.*

Respondent Spath continued, "To the extent you believe you have supervisory authority over Mr. Kammen [Mr. Al Nashiri's counsel learned in the law of death penalty cases, who is not a government employee], I expect you to communicate to him we're moving forward, and that he would wisely probably also make an effort to come here. But I understand I can't order him to the island. There is nothing I can do about that." *Id.* Petitioner replied, "I understand, Your Honor." *Id.* at 10045. Respondent Spath continued, "Same e-mail by 1600. Just let us know if you are going to comply." *Id.* at 10046. He added, "Tomorrow at noon we are going to be in session briefly. I anticipate we are going to have a contempt hearing." *Id.*

At 3:57 p.m. on October 31, 2017, Petitioner sent an email to the commission trial judiciary, also copying the counsel for the parties in the Al Nashiri case. That email stated:

>Your Honor,

7

As Col Aaron [the Deputy Chief Defense Counsel] notified Mr. Sims [a senior attorney-advisory on the commission trial judiciary's staff], we have had huge e-mail lag on the MCDO e-mail server, so I have not received any of your e-mails directly. COL Aaron just printed out Mr. Sims' e-mails that went out today and I am about to read them.

In response to your order "to make arrangements for the... detailed civilian counsel [and] . . . to communicate to them the need to get themselves down here posthaste," I offer the following -

I do not believe that a military commissions judge has the authority to direct the Chief Defense Counsel to take a specific action with respect to those persons he supervises. The Chief Defense Counsel is not part of the enforcement mechanism for a judicial order or the witness production process.

Because I believe that my own interests may now be at odds with those of counsel representing Mr. Al-Nashiri, I have recused myself from any further involvement in supervising any person representing Mr. Al-Nashiri. I am, pursuant to paragraph 9-1a2 of the Regulation for Trial by Military Commission, in the process of designating a replacement supervisory counsel.

Further, I am providing notice the Col Jon Hitesman, USMC, has been detailed to represent me.

Given my e-mail difficulties today, I request that Mr. Sims acknowledge that he has received this.

Semper Fi,

John G. Baker
Brigadier General, U.S. Marine Corps

>Chief Defense Counsel
>Military Commissions Defense Organization
>1620 Defense Pentagon
>Washington, DC 20301-1620

At 8:37 a.m. on November 1, 2017, Petitioner's executive assistant asked the commission trial judiciary administrative support staff for a docketing number in order to file a document called, "BGen Baker's (respondent) Response to Contempt Allegation." The lead paralegal for the commission judges responded via an email sent at 9:12 a.m., "The Military Judge has determined that in this circumstance this Third Party filing is not appropriate, nor required to be considered."

At approximately 12:15 p.m. on November 1, 2017, Respondent Spath opened a session at Naval Station Guantanamo Bay. Respondent Spath indicated that he was holding a contempt proceeding. Trans. At 10052, available at http://www.mc.mil/Portals/0/pdfs/alNashiri2/Al%20Nashiri%20II%20(TRANS1Nov2017-PM).pdf. He started to make allegations against Petitioner. *Id.* at 10053. Petitioner attempted to object, noting that the commission has no personal jurisdiction over him as a United States citizen. *Id.* at 10053-54. Respondent Spath cut him off, stating, "I'm denying you the opportunity to be heard. Thank you. It's a summary proceeding." *Id.* at 10054. He then told Petitioner to sit down. *Id.* at 10055.

Respondent Spath then said that Petitioner violated orders on October 31, 2017, including by invoking privilege and by refusing to withdraw his excusal of Mr. Al Nashiri's three civilian counsel. *Id.* at 10060-61. Respondent Spath asserted that he found beyond a reasonable doubt that Petitioner was contemptuous of the commission in the presence of the commission. *Id.* at 10061-62. He declared Petitioner's excusal of the three counsel null and void. *Id.* at 10064.

Respondent Spath subsequently announced to Petitioner, "You're held in contempt." He imposed a sentence of confinement for 21 days and a $1,000 fine. *Id.* at 10072.

Respondent Spath orally ordered the court bailiff to escort Petitioner to confinement officials, who were directed to confine him in a trailer in a housing area at Naval Station Guantanamo Bay, until the commissions system convening authority designated another place of confinement. *Id.* Respondent Spath followed up his oral order with a written order. *See* Exhibit A (attached). Respondent Spath never allowed Petitioner an opportunity to be heard before confining him.

## ARGUMENT

I.  *Respondent Spath Deprived Petitioner of Due Process by Expressly Denying Him the Opportunity to Be Heard before Finding Him in Contempt and Depriving Him of His Liberty.*

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Respondent Spath provided Petitioner with no advance notice of the purported acts of contempt he would consider at the November 1 hearing. As set out below, Petitioner had multiple potential defenses to a contempt finding. Yet, Respondent Spath expressly refused to allow him to present them, not only rejecting his attempt to make a written filing because Petitioner was a third party to the underlying commission case – though plainly not to the contempt proceeding – but then by expressly stating on the record that he was denying Petitioner any opportunity to be heard. Respondent Spath then ordered Petitioner deprived of his liberty and property without ever allowing him to be heard. That striking departure from American judicial norms is starker still when it came in the context of a military commission and when it resulted in the deprivation of liberty of a United States citizen.

Summary contempt proceedings are "regarded with disfavor." *Taylor v. Hayes*, 418 U.S. 488, 498 (1974) (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)). As the Court emphasized, "[We] have stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence.'" *Id.* (quoting *Groppi v. Leslie*, 404 U.S. 496, 502 (1972) (quoting *In re Oliver*, 333 U.S. 257, 273 (1948))). The Court also noted, "Even where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.'" *Id.* (quoting *Groppi*, 404 U.S. at 504).

Due to such disfavor, where there is a delay between the purported contempt and the summary contempt proceedings, "due process notice and hearing protections attach." *United States v. Glass*, 361 F.3d 580, 588-89 (9th Cir. 2004). In this case, there was more than a 24-hour delay between the purported contempt and the summary contempt proceeding. Moreover, there were no ongoing trial proceedings scheduled between the time of the purported contempt and the summary contempt proceeding. Nothing, therefore, precluded application of traditional due process norms of notice and an opportunity to be heard.

The violations of Petitioner's due process rights alone warrant relief. But, as set forth below, Respondent's rulings were not merely procedurally deficient. Respondent also lacked the substantive authority to hold Petitioner in contempt and to punish him.

II.  *A Judge in a Commission Case Convened Under the Military Commissions Act Has No Unilateral Power to Order Confinement.*

Respondent Spath ordered Petitioner confined not merely without lawful authority, but in direct contravention of a controlling statute. Because Petitioner is now being held in confinement in violation of a clear federal statute, this Court should order his immediate release.

The Military Commissions Act – the statute under which Congress established the commission system in operation at Naval Station Guantanamo Bay – does not provide judges with a general contempt power. Instead, the statute provides that contempt is a defined offense that may be tried by a military commission. Title 10 U.S.C. § 950t(31) provides, "Contempt.— A military commission under this chapter may punish for contempt any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder." Congress also expressly provided that in commissions convened under the Military Commissions Act, such as that in the Al Nashiri case, a military judge may not order anyone into confinement – much less a United States citizen. *See* 10 U.S.C. § 949m(b).

Congress separately provided that, with an exception for guilty pleas, only the full commission by a two-thirds vote, not the military judge, may convict an individual. 10 U.S.C. § 949m(a). Additionally, in every commission case, only the members of the commission may impose a sentence; the military judge may never do so. Congress's language was plain and sweeping: "No person may be convicted by a military commission under this chapter of *any offense*, except as provided in section 949i(b) of this title [guilty plea cases] or by concurrence of two-thirds of the members present at the time the vote is taken." 10 U.S.C. § 949m(a) (emphasis added). Congress also provided that "[e]xcept as provided in paragraphs (2) and (3) [dealing with sentences to death, confinement for life, and confinement for more than 10 years], sentences shall be determined by a military commission by the concurrence of two-thirds of the members present at the time the vote is taken." 10 U.S.C. § 949m(b).

The contempt process in military commissions convened pursuant to the Military Commissions Act stands in stark contrast to that of courts-martial or other military commissions. Article 48, UCMJ reads:

> (a) Authority to punish contempt. A judge detailed to a court-martial, a court of inquiry, the United States Court of Appeals for the Armed Forces, a military Court of Criminal Appeals, a provost court, or a military commission may punish for contempt . . .

10 U.S.C. § 848.

Congress, in a 2011 amendment, made explicitly clear that the judges presiding over commissions under the Military Commissions Act do not have unilateral authority to punish for contempt. Until then, 10 U.S.C. § 848 provided the judges of military commissions with the power to unilaterally punish for contempt certain acts, imposing punishments up to confinement for 30 days and a fine of $100 (which the 2011 law also raised to $1,000). In 2011, Congress enacted an amendment that stated, "This section does not apply to a military commission established under chapter 47A of this title [the Military Commissions Act]." Ike Skelton National Defense Authorization Act for Fiscal Year 2011, Pub. L. No. 111-383, § 542, 124 Stat. 4137. Accordingly, in 2011, Congress expressly removed from chapter 47A commission judges the power held by judges in courts-martial and in other military commissions to hold people in contempt, precisely the power that Respondent Spath – the military judge in a military commission established under the Military Commissions Act – purported to exercise.

Respondent Spath purported both to convict Petitioner of an offense under that chapter and unilaterally to sentence Petitioner without the concurrence of *any* members, much less two-thirds. Respondent Spath's actions unambiguously exceeded his statutory authority.

In finding General Baker in contempt and imposing punishment, Respondent Spath presumably relied on the R.M.C.s, which appear to give the commission judges such authority. R.M.C. 201(c), 801(b)(2), 809. But the regulations expressly provide that they authorize the "exercise of contempt power granted under 10 U.S.C. § 950t." R.M.C. 809(a). As previously noted, that section expressly establishes an offense of contempt and 10 U.S.C. § 949m(a)

13

expressly forbids a military judge from imposing a conviction for a commission offense except pursuant to a guilty plea and § 949m(b) prohibits a military judge from *ever* imposing a sentence.

When Congress delegated commission rule-making authority to the Secretary of Defense, Congress expressly provided, "Such procedures may not be contrary to or inconsistent with this chapter." 10 U.S.C. § 949a(a). Because R.M.C. 809's purported grant of unilateral contempt power is plainly contrary to 10 U.S.C. § 949m, it is invalid and can provide no authority for confinement Petitioner's confinement.

III.   *The Military Commission Had No Personal Jurisdiction Over Petitioner.*

The jurisdiction of a military commission convened under the Military Commissions Act is tightly constrained by statute. Indeed, military tribunals in general are tribunals of special and limited jurisdiction, which must be convened and conducted strictly in accordance with their authorizing statutes. *See, e.g., Runkle v. United States,* 122 U.S. 543, 556 (1887).

Congress has provided, "A military commission under this chapter shall have jurisdiction to try *persons subject to this chapter* for any offense made punishable by this chapter, sections 904 and 906 of this title (articles 104 and 106 of the Uniform Code of Military Justice), or the law of war . . . ." 10 U.S.C. § 948d (emphasis added). The Military Commissions Act defines "Persons subject to military commissions": "Any alien unprivileged enemy belligerent is subject to trial by military commission as set forth in this chapter." 10 U.S.C. § 948c.

While the offense of contempt can be committed by "any person," 10 U.S.C. § 950t(31), the question of who can be found to commit an offense is one of subject matter jurisdiction. The ability to try an individual for that offense also requires personal jurisdiction. Section 948d defines such personal jurisdiction, with reference to § 948c. A military commission has no statutory authority to exercise personal jurisdiction over a U.S. citizen, since such a citizen

cannot fall within § 948c's "alien" requirement. Nor, obviously, is Petitioner an unprivileged enemy belligerent. Accordingly, the Al Nashiri commission had no personal jurisdiction over Petitioner. Respondent Spath's order confining Petitioner was therefore unlawful.

IV. *None of Petitioner's Acts Were Contemptuous.*

As set forth above, contempt in a military commission is a statutorily defined offense. *See* 10 U.S.C. § 950t(31) (using "any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder.")[1] As explained in William Winthrop's seminal work on military justice, *Military Law and Precedents*, the word disorder in the contempt offense should be read in conjunction with the following word riot, so that the offense only reaches:

> assaults committed upon members, or upon persons connected with the court or properly before it; altercations between counsel or spectators; drunken or indecent conduct; loud and continued conversation; any noise or confusion which prevents the court from hearing the testimony, & c.; any shouting, cheering, or other expression of applause or disapprobation, especially if repeated after being checked; contumelious or otherwise disrespectful language, addressed to the court or a member or the judge advocate, of so intemperate a character as to derange the proceedings, especially if persisted in after a warning from the court.

William Winthrop, *Military Law and Precedents* 309 (2d ed. 1920). The leading court-martial appellate case dealing with this area of the law, *United States v. Burnett*, 27 M.J. 99 (C.M.A. 1988), endorsed Winthrop's narrow construction of the contempt provision.

None of Petitioner's acts were close to being contemptuous under the contempt definition followed in military commission proceedings. Rather, Petitioner respectfully disagreed with Respondent Spath that he had the lawful authority to issue any of the orders he did.

---

[1] Title 10 U.S.C § 848, on the other hand, includes the following category of persons in contempt: a person who "willfully disobeys the lawful writ, process, order, rule, decree, or command of the court-martial, court, or military commission." 10 U.S.C. § 848(a)(2). Congress, however, expressly exempted military commissions convened under the Military Commissions Act from that provision's reach and did not include a similar provision in the military commissions contempt statute, 10 U.S.C. § 950t(13).

15

## CONCLUSION

For the foregoing reasons, this Honorable Court should order Petitioner's immediate release from confinement.

Respectfully Submitted:

*Addy R Schmitt*
Barry J. Pollack (D.C. Bar #434513)
Addy R. Schmitt (D.C. Bar #489094)
MILLER & CHEVALIER CHARTERED
900 16th Street, N.W.
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: bpollack@milchev.com
       aschmitt@milchev.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November 2017, a copy of the foregoing Brigadier General John G. Baker's Petition for Writ of Habeas Corpus and Request for Emergency Expedited Consideration and Accompanying Memorandum of Law in Support of General John G. Baker's Petition for Writ of Habeas Corpus was served via electronic mail to:

Brian J. Allen
brian.j.allen8.civ@mail.mil


Bob Easton
robert.e.easton2.civ@mail.mil

_Addy R. Schmitt_
Addy R. Schmitt

# EXHIBIT A

# CONFINEMENT ORDER

**1. PERSON TO BE CONFINED**

| a. NAME (Last, First, Middle Initial) | b. SOCIAL SECURITY NUMBER |
|---|---|
| BAKER, JOHN G. | XXX-XX-XXXX |

| c. BRANCH | d. GRADE | e. UNIT/AGENCY (Parent unit) |
|---|---|---|
| USMC | O-7 | MILITARY COMMISSIONS DEFENSE ORGANIZATION |

**3. TYPE OF CONFINEMENT**

| a. RESULT OF MILITARY COMMISSION | c. RESULT OF CONTEMPT PROCEEDING |
|---|---|
| NO [ ]  YES [ ] | NO [ ]  YES [X] |

**4. OFFENSE(S)** *(List all offense(s) if individual is pre-trial. List guilty finding(s) only if prisoner is military judge finding.)*
Criminal contempt of court.

**5. SENTENCE ADJUDGED** *(Annotate sentence from the result of trial)*
21 Days Confinement
$1000 Fine

**b. ADJUDGED DATE (YYYYMMDD):** 2017/11/01

**6. DESIGNATED LOCATION(S) OF CONFINEMENT:**
**IMMEDIATE:** OFFICE OF MILITARY COMMISSIONS CONTAINERIZED HOUSING UNIT #26B   **REMAINING PERIOD:**

**7. PERSON DIRECTING CONFINEMENT:**

| a. TYPED NAME (Last, First, Middle Initial), GRADE AND TITLE | b. SIGNATURE | c. DATE (YYYYMMDD) | d. TIME |
|---|---|---|---|
| MILITARY JUDGE, COMMISSIONS SPATH VANCE H, Col, USAF | /signature/ | 20171101 | 1403 HRS |

**11. RECEIPT FOR PRISONER** *(Completed by the correctional facility staff upon arrival of the prisoner)*

a. THE PRISONER NAMED ABOVE HAS BEEN RECEIVED FOR CONFINEMENT AT *(Facility Name and Location)*

ON _____ (YYYYMMDD)   AND TIME: _____ (Time)

| b. PERSON RECEIPTING FOR PRISONER (Typed name (Last, First, Middle Initial), Grade and Title) | c. SIGNATURE | d. DATE (YYYYMMDD) | e. TIME |
|---|---|---|---|
|  |  |  |  |

**OMC FORM 2707, NOV 17**