IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRIGADIER GENERAL JOHN G. BAKER, UNITED STATES MARINE CORPS, | ) ) ) | |
| *Petitioner*, | ) ) | CIVIL ACTION (HABEAS CORPUS) |
| v. | ) ) | No. 17-CV-2311 (RCL) |
| COLONEL VANCE SPATH, UNITED STATES AIR FORCE, In his Official Capacity, and | ) ) ) ) | |
| JAMES MATTIS, SECRETARY OF DEFENSE, In his Official Capacity, | ) ) ) | |
| *Respondents*. | ) | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF
PETITIONER'S MOTION FOR HABEAS RELIEF**

## TABLE OF CONTENTS

Page

Statement of Facts ...................................................................................................................... 2

Argument ...................................................................................................................................... 9

   A.   This Court retains the authority to grant habeas relief because Petitioner was confined when his habeas petition was filed and the contempt finding generates severe continuing collateral consequences. ................................................................................................... 9

   B.   Habeas relief is ripe. ..................................................................................................... 14

   C.   The contempt finding was unlawful. ............................................................................ 16

      1.   Declining to testify or violating a military judge's order does not meet the statutory definition of contempt that applies in military commissions convened under the MCA. .................................................................................................................... 16

      2.   A military judge is statutorily precluded from unilaterally imposing a contempt finding. ................................................................................................................... 23

      3.   The summary contempt procedures employed by Respondent Spath violated the MCA. .................................................................................................................... 26

      4.   Respondent Spath violated Petitioner's due process rights by resorting to summary contempt procedures. ............................................................................................... 30

      5.   The military commission had no personal jurisdiction over Petitioner. .................... 32

Conclusion ................................................................................................................................ 33

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ..................................................................................................... 30

*Cooke v. United States*,
267 U.S. 517 (1925) ..................................................................................................... 25

*Duncan v. Walker*,
533 U.S. 167 (2001) ..................................................................................................... 19

*Gill v. Villagomez*,
140 F.3d 833 (9th Cir. 1998) ........................................................................................ 19

*Groppi v. Leslie*,
404 U.S. 496 (1972) ..................................................................................................... 27

*\*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994) ................................................................................................. 9, 10

*Khadr v. Obama*,
724 F. Supp. 2d 61 (D.D.C. 2010) ................................................................................ 14

*Lambert v. Blackwell*,
387 F.3d 210 (3d Cir. 2004) ......................................................................................... 15

*In re Mo. Bank, N.A.*,
901 F.2d 1449 (8th Cir. 1990) ...................................................................................... 25

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..................................................................................................... 30

*O'Sullivan v. Boerckel*,
526 U.S. 838 (1999) ..................................................................................................... 15

*\*Obaydullah v. Obama*,
609 F.3d 444 (D.C. Cir. 2010) ................................................................................. 14, 16

*Office of Disciplinary Counsel v. Partington*,
No. SCAD-11-0000162, 2011 Haw. LEXIS 237, 2011 WL 5517313 (Haw. Nov. 9,
2011) (as corrected Dec. 8, 2011) (unpublished opinion) .............................................. 11

*In re Oliver*,
333 U.S. 257 (1948) ................................................................................................. 27, 31

*In re Partington*,
69 M.J. 408 (C.A.A.F. 2010) ......................................................................................... 11

*Reid v. Covert*,
354 U.S. 1 (1957) ................................................................................................... 21

*Runkle v. United States*,
122 U.S. 543 (1887) ........................................................................................ 25, 32

*Sacher v. United States*,
343 U.S. 1 (1952) ................................................................................................... 27

*Schlesinger v. Councilman*,
420 U.S. 738 (1975) .............................................................................................. 14

*Spencer v. Kemna*,
523 U.S. 1 (1998) ................................................................................................... 9

*In re Steward*,
828 F.3d 672 (8th Cir. 2016) ............................................................................. 10

*Taylor v. Hayes*,
418 U.S. 488 (1974) ..................................................................................... 27, 31, 32

*Ex Parte Terry*,
128 U.S. 289 (1888) .............................................................................................. 31

*United States v. Burnett*,
27 M.J. 99 (C.M.A. 1988) .............................................................................. 21, 24

*United States v. Caso*,
723 F.3d 215 (D.C. Cir. 2013) .............................................................................. 9

*United States v. Ceballos-Martinez*,
387 F.3d 1140 (10th Cir. 2004) ......................................................................... 19

*United States v. Glass*,
361 F.3d 580 (9th Cir. 2004) ............................................................................. 31

*United States v. Novak*,
476 F.3d 1041 (9th Cir. 2007) (en banc) ......................................................... 19

*United States v. Scrimsher*,
493 F.2d 842 (5th Cir. 1974) ............................................................................. 11

*United States v. Stevens*,
663 F.3d 1270 (D.C. Cir. 2011) ......................................................................... 10

*United States v. Winkles*,
795 F.3d 1134 (9th Cir. 2015) ........................................................................... 19

**Statutes**

10 U.S.C. § 848 ....................................................................................................... 23

10 U.S.C. § 948c ............................................................................................................... 32, 33

10 U.S.C. § 948d ............................................................................................................... 32, 33

10 U.S.C. § 948k ....................................................................................................................... 12

10 U.S.C. § 948q ....................................................................................................................... 26

10 U.S.C. § 948s ................................................................................................................... 26, 27

10 U.S.C. § 949a ............................................................................................................... 2, 26, 27

10 U.S.C. § 949m ............................................................................................................... 24, 26

10 U.S.C. § 950c ....................................................................................................................... 15

10 U.S.C. § 950t ................................................................................................................... *passim*

10 U.S.C. § 1370 ....................................................................................................................... 12

28 U.S.C. § 2254 ....................................................................................................................... 15

United States Code title 10 Chapter 47A ................................................................. 17, 18, 23, 32

Ike Skelton National Defense Authorization Act for Fiscal Year 2011,
    Pub. L. No. 111-383, 124 Stat. 4137 (2011) ................................................................. 17, 18

Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006) ............................... 17, 23

Military Commissions Act of 2009, Pub. L. No. 111-84, 123 Stat. 2574 (2009) ..................... 16, 17, 23, 24

**Other Authorities**

18 Op. Att'y Gen. 278 (1885) ....................................................................................................... 24

DIGEST OF OPINIONS OF THE JUDGE ADVOCATES GENERAL OF THE ARMY 1912 (1917) .............. 21, 25, 28

JAGINST 5803.1E, Professional Conduct of Attorneys Practicing Under the Cognizance
    and Supervision of the Judge Advocate General (Jan. 20, 2015) ......................................................... 11

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.) .......................................................... 17, 20

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) .................................................... 10, 11, 22

S. Rep. No. 111-201 (2010) ....................................................................................................... 19

COMES NOW PETITIONER, by and through his undersigned counsel, and files this supplemental brief in support of his motion for habeas relief.

Petitioner was held in contempt by a single military judge of a Guantanamo Bay military commission for failure to follow the military judge's orders, even though Congress explicitly excluded failure to obey an order as grounds for contempt in the Guantanamo Bay military commissions. The military judge sentenced Petitioner to 21 days confinement and a $1,000 fine. After a habeas petition was filed in this Court, the convening authority *sua sponte* deferred the sentence while he reviewed the matter. The Rules for Military Commissions make the convening authority the final appeal authority for contempt rulings by military commissions. This Court denied a government motion to stay the habeas petition, but as a matter of comity stated it would not issue a ruling for a reasonable period of time while the convening authority reviewed the matter. The convening authority subsequently completed its review and set aside the remainder of the sentence (the remaining confinement and the fine), but held that the contempt finding was lawful and upheld it. In doing so, the convening authority failed meaningfully to address the arguments raised in the pending habeas petition as to why the military judge lacked the statutory authority to find Petitioner in contempt and failed to comply with the requirements of due process. The convening authority also referred the approved contempt finding to military officials empowered to impose professional discipline on Petitioner, discipline that could result in his removal from his current position, demotion in grade, diminution in pay, or even forced retirement and reciprocal disciplinary action by civilian bar licensing authorities. Accordingly, Petitioner asks this Court to rule on the merits of his petition and vacate the unlawful contempt conviction.

**Statement of Facts**

This habeas action arises from proceedings collateral to the capital military commission proceedings against Abd Al Rahim Hussein Al Nashiri at Naval Station Guantanamo Bay, Cuba.

On October 11, 2017, Petitioner Brigadier General John G. Baker, exercising his duties as Chief Defense Counsel of the military commission system, granted a request by three of Mr. Al Nashiri's civilian counsel to be excused from the case after receiving advice from a professional responsibility expert that their continued involvement in the case would be unethical.  Appendix A.  Military commission procedures are largely governed by regulations called the Rules for Military Commissions (R.M.C.s) that were issued by the Secretary of Defense pursuant to authority delegated by Congress.  *See* 10 U.S.C. § 949a.  R.M.C. 505(d)(2)(B) provides that after the formation of an attorney-client relationship, "an authority competent to detail such counsel may excuse or change such counsel only:  (i) Upon request of the accused or application for withdrawal by such counsel; or (ii) For other good cause shown on the record."  R.M.C. 505(d)(2).[1]  Petitioner was the authority competent to detail defense counsel at the time he granted the three civilian attorneys' application for excusal.  *See* Regulation for Trial By Military Commission, ¶ 9-1.a.[2]

On October 16, 2017, Respondent Spath issued a briefing order in the case of *United States v. Al Nashiri*.  Appendix B.  That order noted that the defense had filed notices of the Chief Defense Counsel's excusal of the learned counsel and two additional civilian defense counsel.  *Id.*, ¶ 1.  The order also noted that the detailed military defense counsel requested that proceedings be abated pending detail of a new learned counsel.  *Id.*   The order then stated, *inter alia*:

---

[1] *Available at* https://www.mc.mil/Portals/0/pdfs/2016_Manual_for_Military_Commissions.pdf.
[2] A*vailable at* https://www.mc.mil/Portals/0/pdfs/RTMC%20-%20Change%20to%20Rule%209%20-%202016.pdf.

> This Commission has not found "good cause" to authorize the termination of the attorney-client relationship between the Accused and any of his Civilian Defense Counsel who have appeared before this Commission. Accordingly, Mr. Kammen, Ms. Eliades, and Ms. Spears remain counsel of record in this case, and are ordered to appear at the next scheduled hearing of this Commission, unless otherwise excused by this Commission.

*Id.*, ¶ 2.

The order also authorized, but did not require, the Chief Defense Counsel to "file a brief on the issue of his authority unilaterally to excuse Learned Counsel and other Civilian Counsel after they have formed an attorney-client relationship with the Accused and appeared in court on his behalf," as well as a reply brief if the government chose to respond to his initial brief. *Id.*, ¶5. Petitioner subsequently filed such a brief and reply brief.

On the afternoon of October 27, 2017, Respondent Spath issued an order in which he denied the defense abatement request. Appendix C. While finding that the rules governing attorney excusal are ambiguous, he concluded that "the Commission is the appropriate authority to determine if good cause is shown on the record to warrant excusal of counsel pursuant to R.M.C. 505(d)(2)(B)." *Id.* Respondent Spath's October 27 order did not direct Petitioner to do anything.

On the afternoon of Monday, October 30, 2017, the senior attorney advisor to the military commissions trial judiciary sent an email to Petitioner, among others, stating that Respondent Spath would convene an open military commission session on October 31 at 10 a.m. Appendix D. The email stated, "The Chief Defense Counsel should also be available to testify." *Id.* Later that afternoon, Petitioner filed a supplement to his previous reply filed in response to Respondent Spath's October 16, 2017 order. Appendix E. The supplement recounted certain communications between Petitioner and Mr. Kammen, Ms. Spears, and Ms. Eliades culminating

in their final decision not to travel to Guantanamo on October 29 and indicated that Petitioner had informed the military commissions system's chief prosecutor and the legal advisor to the convening authority of that decision the morning of October 29. *Id*. The supplement continued, "Any additional information that I have regarding this matter is privileged, confidential, and/or attorney work product." *Id*.

On the morning of October 31, 2017, Respondent Spath convened a hearing of the military commission in the Al Nashiri case. After noting that the excused counsel were not present and that he disagreed with Petitioner's finding of good cause to excuse them, Respondent Spath ordered Petitioner to the witness stand. Trans., Oct. 31, at 10037.[3] Petitioner refused to take the stand, stating, "Well, Your Honor, pursuant to Rule 501(b)(1), I am asserting my right to refuse to be a witness in this case." *Id*. at 10039. That rule provides, "A claim of privilege includes, but is not limited to, the assertion by any person of a privilege to . . . (1) Refuse to be a witness." M.C.R.E. 501(b)(1).[4]

Respondent Spath disagreed that Petitioner had the authority to decline to appear as a witness. Trans., Oct. 31, at 1039-42. The following colloquy between Respondent Spath and Petitioner then occurred:

> CDC [BGen BAKER]: Your Honor, again, under Rule 501(b)(1) I refuse to appear as a witness.
>
> MJ [Col SPATH]: All right. So, I'm ordering you to testify. You are refusing to come up here, take the oath, and testify; is that accurate?
>
> CDC [BGen BAKER]: That is accurate; yes, sir.
>
> MJ [Col SPATH]: All right. I'm also ordering you to rescind the direction you gave when you excused both learned outside – appointed learned counsel and

---

[3] A*vailable at* http://www.mc.mil/Portals/0/pdfs/alNashiri2/Al%20Nashiri%20II%20(TRANS31Oct2017-AM).pdf.

[4] *Available at* https://www.mc.mil/Portals/0/pdfs/2016_Manual_for_Military_Commissions.pdf.

the two civilians. Are you refusing to comply with that order as well? You excused them; you released them.

CDC [BGen BAKER]: Yes, sir.

MJ [Col SPATH]: I'm ordering you to send them a note saying you are not releasing them. I can't order Mr. Kammen here. I know that. I know you've got two DoD employees that work for you. I know what their government contract says. But that is your choice as their supervisory attorney, and everybody can deal with that, including your supervisor. My question to you is: I'm ordering you to send them a memo telling them their withdrawal is not approved because you don't have the authority.

CDC [BGen BAKER]: Oh, I'm definitely not going to ----
MJ [Col SPATH]: Okay.

CDC [BGen BAKER]: ---- I am definitely not – Your Honor, Rule 5-0 – I understand your ruling. I understand your ruling.

MJ [Col SPATH]: You don't, because you haven't done anything to fix the ruling. How does this normally work? I issue a ruling. You disagree with it – or you all disagree with it and we go to the appellate court and they tell me I'm right or wrong. They do it every week. And I'm okay with it.

That is the normal process. You interpreted a rule, and now there are two rulings from this commission that tell you you got it wrong.

CDC [BGen BAKER]: Your Honor, if your – if your order to me is to – I want to make sure that I understand what – your order to me. If your order to me is, General Baker, you must rescind your action that you took on October 13th ----

MJ [Col SPATH]: Yes.

CDC [BGen BAKER]: ---- whatever the date – whatever the correct date is, excusing learned counsel and assistant defense counsel, I refuse to follow that order.

MJ [Col SPATH]: And you are also refusing to testify.

CDC [BGen BAKER]: Yes, sir, pursuant to ----

MJ [Col SPATH]: I understand you are citing a rule. I have ordered you to come up here and testify and take the oath.

Okay. We'll talk more tomorrow.

*Id*. at 10042-44.

At 8:37 a.m. the following day, Petitioner's executive assistant asked the commission trial judiciary administrative support staff for a docketing number in order to file a document called, "BGen Baker's (respondent) Response to Contempt Allegation." Appendix F. The lead paralegal for the commission judges responded via an email sent at 9:12 a.m. stating, "The Military Judge has determined that in this circumstance this Third Party filing is not appropriate, nor required to be considered." Appendix G.

At approximately 12:15 p.m. that day, Respondent Spath opened a session at Naval Station Guantanamo Bay. Respondent Spath indicated that he was holding a contempt proceeding. Trans., Nov. 1, at 10052.[5] He started to make allegations against Petitioner. *Id*. at 10053. Petitioner attempted to object, noting that the commission had no personal jurisdiction over him as a United States citizen. *Id*. at 10053-54. Respondent Spath cut him off, stating, "I'm denying you the opportunity to be heard. Thank you. It's a summary proceeding." *Id*. at 10054. He then told Petitioner to sit down. *Id*. at 10055. Respondent Spath then said that Petitioner violated orders on October 31, 2017, including by invoking privilege and by refusing to withdraw his excusal of Mr. Al Nashiri's three civilian counsel. *Id*. at 10060-61. He proceeded to find Petitioner in contempt. *Id*. at 10064.

Respondent Spath provided two bases for his contempt finding. First, "I find, beyond a reasonable doubt, that on 31 October 2017 you willfully refused to obey the commission's order to rescind your excusal and that that behavior was contemptuous to the commission and it was in front of the commission." *Id*. at 10063. However, Respondent Spath also declared that Petitioner's "purported excusals of Mr. Kammen, Ms. Eliades and Ms. Spears dated 11 October

---

[5] *Available at* http://www.mc.mil/Portals/0/pdfs/alNashiri2/Al%20Nashiri%20II%20(TRANS1Nov2017-PM).pdf.

2017 are null and void, and they have been since my written order on 16 October 2017 and my follow-on written order dated 27 October 2017." *Id*. at 10064.

Second, "Your refusal to testify on multiple occasions in my presence is also contemptuous and contemplated both by the Manual for Courts-Martial and the Military Commissions Act as an act of contempt and a disorder." *Id*. at 10063.  He continued, "I find beyond a reasonable doubt that your acts then constituted disorders that disturbed these proceedings, disorders that disturbed these proceedings significantly." *Id*. at 10064.

Respondent Spath subsequently announced to Petitioner, "You're held in contempt."  He imposed a sentence of confinement for 21 days and a $1,000 fine.  *Id*. at 10072.

Respondent Spath orally ordered the court bailiff to escort Petitioner to confinement officials, who were directed to confine him in a trailer in a housing area at Naval Station Guantanamo Bay, until the commissions system convening authority designated another place of confinement.  *Id*.  Respondent Spath followed up his oral order with a written order.  Appendix H.  Respondent Spath never allowed Petitioner an opportunity to be heard before finding him in contempt.

On November 2, 2017, while Petitioner remained confined, his counsel filed a petition for a writ of habeas corpus with this Court.  A hearing was held that afternoon.  Petitioner argued *inter alia* that Brigadier General Baker's conduct did not meet the definition of contempt as defined by the statute governing military commissions at Guantanamo, that a single military judge did not have the authority to find someone in contempt or to punish contempt, and that the military judge lacked jurisdiction over Brigadier General Baker, a United States citizen.  After hearing argument from counsel, the Court stated that it would announce its ruling at a subsequent hearing to be held at 2 p.m. on Friday, November 3, 2017.

Approximately one hour before the November 3, 2017 hearing began, the convening authority *sua sponte* deferred Petitioner's confinement so that the convening authority could review the matter. Appendix I. On that same day, a copy of the legal advisor's recommendation to the convening authority was served on Petitioner, Appendix J, starting a 20-day period for Petitioner to provide a submission to the convening authority. *See* R.M.C. 1105(b). Per R.M.C. 809(d), the convening authority is the final appeal from a military commission ruling. ("The action of the convening authority is not subject to further review or appeal.") At the November 3, 2017 hearing before this Court, counsel for the government orally moved to stay the habeas petition. The Court denied that request. Trans., Nov. 3, at 10. It did indicate, however, that it would not immediately issue its ruling on the merits and would provide the convening authority a reasonable period of time to act. *Id.*

On Thursday, November 9, Petitioner filed a submission with the convening authority contending that the contempt finding was unlawful. Appendix K.

On Tuesday, November 21, the convening authority issued his action. Appendix L. That action found that the contempt "findings of the military judge are correct in law and fact," and therefore left "undisturbed the findings of contempt against you." Action on Contempt Proceedings at 1. The convening authority remitted the unexecuted confinement term and the fine. *Id.* He also stated he was "forwarding the findings and record of proceedings to the appropriate authority overseeing your service as a Judge Advocate within the Department of the Navy, the DoD Standards of Conduct Office, and the Staff Judge Advocate to the DoD General Counsel's Office [sic], and the Commandant of the United States Marine Corps for an administrative ethics review." *Id.*

On Wednesday, November 22, Petitioner's detailed military defense counsel submitted to the convening authority a written request to be informed whether the convening authority planned to refer Petitioner's case to the Court of Military Commission Review.  Appendix M. He also requested the information upon which the convening authority relied in acting on the contempt finding.  *Id*.  To date, the convening authority has not responded to that request.

**Argument**

A.      **This Court retains the authority to grant habeas relief because Petitioner was confined when his habeas petition was filed and the contempt finding generates severe continuing collateral consequences.**

It is well-established that where a habeas petition is filed when the petitioner is confined, a court retains authority to grant habeas relief even after that confinement has ended if the petitioner will suffer continuing collateral consequences.  *See, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998); *United States v. Caso*, 723 F.3d 215, 217-18 (D.C. Cir. 2013).  Where the action challenged is a criminal conviction, continuing collateral consequences will be presumed. *Spencer*, 523 U.S. at 8.  Otherwise, the petitioner must demonstrate such collateral consequences.  *Id.* at 14.

Here, the action complained of was a finding of criminal contempt, thus presumptively satisfying the continuing collateral consequences requirement.  Courts "generally ha[ve] deferred to a legislature's determination whether a sanction is civil or criminal."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 838 (1994).  The Military Commissions Act (MCA) itself characterizes contempt as a "Crime[] triable by military commission."  10 U.S.C. § 950t. Additionally, the Manual for Military Commissions states, "The jurisdiction of a military commission is penal."  R.M.C. 201(a)(1).

Moreover, the sentence here has all the hallmarks of criminal contempt: it imposes "a fixed sentence of imprisonment . . . that the contemnor cannot avoid or abbreviate through later compliance" and a "flat, unconditional fine" that "the contemnor has no subsequent opportunity to reduce or avoid . . . through compliance." *Bagwell*, 512 U.S. at 828-829; *accord In re Steward*, 828 F.3d 672, 686 (8th Cir. 2016) ("Civil contempt is distinguished from criminal contempt by the presence of a purgation provision, which allows the contemnor to purge himself of contempt by complying with the court's orders."). As the D.C. Circuit has observed, civil contempt is generally used to compel compliance with a court's order while "criminal contempt is used to punish, that is, to vindicate the authority of the court following a transgression rather than to compel future compliance or to aid the complainant." *United States v. Stevens*, 663 F.3d 1270, 1274 (D.C. Cir. 2011). The latter is an apt description of what Respondent Spath attempted to do in this case. Because the contempt finding in this case was criminal, continuing collateral consequences presumptively exist, thus preserving this Court's authority to grant habeas relief.

Even absent this presumption, the contempt finding against Petitioner will clearly have ongoing collateral consequences. The convening authority referred Petitioner to, among others, the Judge Advocate General of the Navy and the Commandant of the Marine Corps for an ethics review. Pursuant to Rule for Courts-Martial 109, "Each Judge Advocate General is responsible for the professional supervision and discipline of . . . judge advocates . . . who practice in proceedings governed by the code and this Manual." Rule for Courts-Martial (R.C.M.) 109(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.).[6] The Judge Advocates General are authorized to promulgate rules of professional conduct and sanctions for violating those rules,

---

[6] *Available at* http://jsc.defense.gov/Portals/99/Documents/MCM2016.pdf?ver=2016-12-08-181411-957.

which may include "indefinite suspension from practice in courts-martial and in the Courts of Criminal Appeals." *Id.*

The Judge Advocate General of the Navy – the Judge Advocate General with authority over Petitioner – has promulgated such rules.  JAGINST 5803.1E, Professional Conduct of Attorneys Practicing Under the Cognizance and Supervision of the Judge Advocate General (Jan. 20, 2015).[7]  Those rules include sanctions for misconduct by covered attorneys, including suspension from practice before Department of the Navy courts-martial or administrative board proceedings or the Navy-Marine Corps Court of Criminal Appeals.  *Id.*, ¶ 10.c(f).  *See also* Declaration of Colonel Stephen C. Newman, USMC (Ret.), dated December 1, 2017 (hereafter "Newman Decl."), Appendix O at ¶ 19.  Additionally, an ethics review can result in a report to an attorney's civilian licensing authorities.  *Id.*  State licensing authorities and federal courts have, in the past, imposed reciprocal discipline on attorneys who were disciplined by a Judge Advocate General.  *See*, *e.g.*, *Office of Disciplinary Counsel v. Partington*, No. SCAD-11-0000162, 2011 Haw. LEXIS 237, 2011 WL 5517313, at *2 (Haw. Nov. 9, 2011) (as corrected Dec. 8, 2011) (unpublished opinion); *In re Partington*, 69 M.J. 408 (C.A.A.F. 2010) (mem); *see also United States v. Scrimsher*, 493 F.2d 842, 844 (5th Cir. 1974) (detailing the "adverse career consequences" of a contempt conviction on an attorney).

Moreover, in Petitioner's case, decertification to practice before naval tribunals arising from the unlawful contempt finding could even result in his administrative separation from the United States Marine Corps.  The loss of certification necessary to perform military duties in the

---

[7] *Available at* http://www.jag.navy.mil/library/instructions/JAGINST_5803-1E.pdf.

officer's Marine Corps Occupational Field is a basis for separating an officer.   SECNAVINST 1920.6C, Administrative Separation of Officers (26 Aug 2015), enclosure (3), ¶ 1.b(10).[8]

Additionally, a suspension or decertification would result in Petitioner's removal from his current position.   Under 10 U.S.C. § 948k(d)(2), the Chief Defense Counsel of the military commission system must be certified as competent to perform duties as a defense counsel before general courts-martial by the Judge Advocate General of the armed force of which the Chief Defense Counsel is a member.   Without the necessary certification, Petitioner could no longer serve as Chief Defense Counsel.   Removal from that position would reduce Petitioner's grade from brigadier general to colonel, as he was promoted to the temporary grade of brigadier general only while serving in the position of Chief Defense Counsel.   Appendix N.   Removal from that position would, therefore, result in an immediate substantial financial loss to Petitioner and that financial loss would continue in the form of diminished retirement pay for the rest of his life.

Moreover, even without a suspension or decertification, the unlawful contempt finding alone could result in Petitioner's loss of the increased retirement pay for the grade of brigadier general if it were used to find that his service as a brigadier general was not satisfactory.   *See generally* 10 U.S.C. § 1370.

An accompanying declaration by Colonel Stephen C. Newman, USMC (Ret.), a former Chief Defense Counsel of the Marine Corps, describes additional continuing collateral consequences of the unlawful contempt finding.   Appendix O (Newman Decl.).   Those include the following.

---

[8] *Available at* https://doni.documentservices.dla.mil/Directives/01000%20Military%20Personnel%20Support/01-900%20Military%20Separation%20Services/1920.6C%20CH-5.pdf.

First, Marine Corps Order (MCO) P5800.16A requires that, as a result of the unlawful contempt finding, the media interest, and the sentence of confinement – a portion of which was approved by the convening authority – Petitioner be reported in the Officer Disciplinary Notebook (ODN) system.  *Id*. at ¶ 8.  The ODN is designed to report and track officer misconduct and serves as a database of incidents for future personnel decisions.  Although on officer entry is never removed, a detailed report of misconduct must be submitted to the Judge Advocate Division of the Marine Corps headquarters in order to "close out" the ODN case.  This close out report will also contain the required decision as to whether the officer should be required to show cause to remain on active duty.  If the officer is required to show cause, a Board of Inquiry (BOI) will be convened in accordance with Secretary of the Navy Instruction (SECNAVINST) 1920.6C.  The BOI will determine if a basis for misconduct or substandard performance exists, and if so whether the officer should be retained or separated from the service (retired in Petitioner's case).  If involuntary retirement is recommended, the board will also recommend at what grade he should be retired.  The standard for retirement grade determination is that the officer be retired at the grade at which he or she last served satisfactorily.  In Petitioner's case, the final decision as to grade determination rests with the Secretary of the Navy.

Second, under the Performance Evaluation System order, MCO 1610.7, due to the contempt conviction, an adverse fitness report must be submitted within 60 days by Petitioner's reporting senior.  Newman Decl. at ¶ 14.  This adverse report will become part of Petitioner's permanent Official Military Personnel File (OMPF) and will affect any future promotion opportunities or other assignments where his OMPF serves as the primary evaluation for assignment.  This includes the Staff Judge Advocate to the Commandant of the Marine Corps

selection/promotion board expected to convene in 2018 where Petitioner will be the senior officer eligible for promotion to what is currently a two-star (major general) assignment.

Third, because Petitioner is a temporary brigadier general and serves in that grade only while filling the billet of Chief Defense Counsel of military commissions, a decision to relieve him of his duties as a result of this contempt finding will automatically reduce him to the grade of colonel. *Id*. at ¶ 10.

Fourth, in accordance with SECNAVINST 1401.4A, the unlawful contempt finding will be considered "credible information of an adverse nature." *Id*. at 11. All future promotion and selection boards considering Petitioner will be provided an Adverse Information Summary (AIS) describing the details of the events deemed to be adverse. This AIS would be an extra document to be considered in addition to the OMPF and would detract from Petitioner's record in relation to other officers who do not have an AIS to accompany their OMPF.

Fifth, when Petitioner retires from the Marine Corps, a retirement grade determination will be made in accordance with SECNAVINST 1920.6C. *Id*. at ¶ 12. For the same reasons as those discussed above, the unlawful contempt finding could adversely affect that grade determination.

Accordingly, even if continuing collateral consequences were not presumed from the criminal nature of the contempt finding, the unlawful contempt finding will impose severe ongoing adverse effects on Petitioner. This case, therefore, is not moot and this Court retains the authority to grant habeas relief.

**B.    Habeas relief is ripe.**

"[C]onsiderations of comity" generally lead courts not to "entertain habeas petitions by military prisoners unless all available military remedies have been exhausted," *see Schlesinger v. Councilman*, 420 U.S. 738, 756, 758 (1975), but these requirements are not jurisdictional. *Khadr*

*v. Obama*, 724 F. Supp. 2d 61, 65 (D.D.C. 2010).  Abstention is not necessary where there is no currently-pending military proceeding "and the Government has provided [the court] with no reason to believe that . . . a referral" for additional proceedings is imminent.  *Obaydullah v. Obama*, 609 F.3d 444, 448 (D.C. Cir. 2010).  That is exactly the situation here.

The Rules for Military Commissions purport to deny any review of a convening authority's action in a contempt case.  R.M.C. 809(d) ("The action of the convening authority is not subject to further review or appeal.").

The convening authority's action discusses the possibility of Petitioner filing an appeal with the Court of Military Commission Review.  Convening Authority's Action at 6, ¶ 15.  It is difficult to discern whether the convening authority is suggesting that Petitioner could have filed an appeal to challenge Respondent Spath's rulings concerning the excusal of the civilian counsel in the Al Nashiri case or can now file an appeal of the contempt finding.  In either case, the suggestion is legally erroneous because it is the convening authority who initiates an appeal to the Court of Military Commissions Review.  *See* 10 U.S.C. § 950c(a).  Nor did the convening authority provide any suggestion of how such an appeal could be reconciled with R.M.C. 809(d).  In an abundance of caution, however, on November 22, 2017, Petitioner's detailed military defense counsel asked the convening authority whether he intends to refer Petitioner's case to that Court.  To date, the convening authority has provided no response.

Nor does the law require Petitioner to exhaust every conceivable avenue for extraordinary relief before his claim becomes ripe for Article III habeas relief.  For purposes of 28 U.S.C. § 2254 habeas relief, "state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past."  *Lambert v. Blackwell*, 387 F.3d 210, 232 (3d

Cir. 2004) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999)).  There is no reason to hold a U.S. service member seeking relief from a ruling of a military commission to a higher standard.

Particularly in light of R.M.C. 809(d)'s purported prohibition against any form of judicial review of a contempt proceeding after the convening authority's action, the time is ripe for this Court's review of the contempt finding's lawfulness.  *See Obaydullah*, 609 F.3d at 448.

### C.      The contempt finding was unlawful.

Respondent Spath's contempt finding was unlawful for at least five reasons:  (1) the scope of the contempt offense under the MCA does not include declining to testify or violating a military judge's orders; (2) the MCA denies commission military judges any authority to enter unilateral contempt findings; (3) the summary contempt procedures that Respondent Spath employed violate the MCA; (4) even if summary contempt procedures were statutorily authorized, their use in this case violated Petitioner's due process rights; and (5) the military commission had no personal jurisdiction over Petitioner.  The convening authority's conclusory statement that Respondent Spath's contempt finding was in accordance with applicable case law, statutes, regulations, and the facts was wrong.

### 1.      Declining to testify or violating a military judge's order does not meet the statutory definition of contempt that applies in military commissions convened under the MCA.

The MCA – the statute under which Congress established the commission system operating at Naval Station Guantanamo Bay – does not provide judges with a general contempt power.  *See* Military Commissions Act of 2009, Title XVII, National Defense Authorization Act for Fiscal Year 2010, Pub. L. No. 111-84, 123 Stat. 2190, 2574 (codified as amended at Chapter 47A, title 10, United States Code).  Instead, the statute provides that contempt is a defined

offense that may be tried by a military commission.  Section 950t(31), which is located within a statutory section titled, "Crimes triable by military commission," provides, "Contempt.—A military commission under this chapter [47A] may punish for contempt any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder."  10 U.S.C. § 950t(31).

The definition of contempt in military commissions convened pursuant to the MCA contrasts sharply with the current contempt prohibition that applies at courts-martial or other military commissions.  Article 48 of the Uniform Code of Military Justice (UCMJ) governs contempt in courts-martial and military commissions other than those convened under the MCA.[9]

Prior to 2011, Article 48 gave certain specified military tribunals the power to "punish for contempt any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder" – the same language now used in 10 U.S.C. § 950t(31).  *See* Art. 48, UCMJ, *reprinted in* Manual for Courts-Martial, United States, at A2-14 (2008 ed.).[10]  Article 48 likewise did not cover violations of a military judge's orders or a refusal to testify.  That limitation was well-understood.  The discussion accompanying R.C.M. 809 in the *Manual for Courts-Martial* expressly noted, "Refusal to appear or to testify is not punishable under Article 48."  Discussion, R.C.M. 809(a), Manual for Courts-Martial, United States (2008 ed.).

---

[9] A 2006 amendment to Article 48 added an explicit statement that Article 48 does not apply to military commissions convened under the MCA:  "This section does not apply to a military commission established under chapter 47A of this title."  Military Commissions Act of 2006, Pub. L. No. 109-366, § 4(a)(2), 120 Stat. 2600, 2631.  When Congress amended Article 48 of the UCMJ two years after enacting the Military Commissions Act of 2009, Pub. L. No. 111-84, 123 Stat. 2574, Congress expressly reenacted that limitation. Ike Skelton National Defense Authorization Act for Fiscal Year 2011, Pub. L. No. 111-383, § 542, 124 Stat. 4137, 4218 (2011).

[10] *Available at* http://www.loc.gov/rr/frd/Military_Law/pdf/MCM-2008.pdf.

As discussed below, that changed when Congress amended **Article 48** in 2011.  The convening authority acknowledged that the language of the military commission system's contempt provision – 10 U.S.C. § 950t(31) – "is nearly identical to that of **Article 48 of the Uniform Code of Military Justice (U.C.M.J.)** prior to the U.C.M.J.'s amendment in 2011." Convening Authority's Action at 4, ¶ 4.  Yet, inexplicably, the convening authority failed to reach the necessary conclusion that, like the pre-2011 **Article 48**, the nearly identical **§ 950t(31)** still does not encompass failing to obey an order.

When Congress enacted § 950t(31) in 2009, it defined contempt in **MCA** military commissions to mirror the definition of contempt in **Article 48**.  That changed in 2011 when Congress amended Article 48.  The 2011 amendments added a new form of contemnor – a person who "willfully disobeys the lawful writ, process, order, rule, decree, or command of the court-martial, court, or military commission."  Ike Skelton National Defense Authorization Act for Fiscal Year 2011, Pub. L. No. 111-383, § 542, 124 Stat. 4137, 4218 (2011) (codified at 10 U.S.C. § 848(a)(3)).  When adding this new category of contemptuous conduct to Article 48, Congress was aware that it was not changing the definition of contempt in MCA military commissions because, since 2006, Article 48 has been expressly inapplicable to MCA military commissions.  Moreover, the same section of the Ike Skelton National Defense Authorization Act for Fiscal Year 2011 that added the third category of contempt also expressly reenacted the language that "[t]his section does not apply to a military commission established under chapter 47A of this title."  Ike Skelton National Defense Authorization Act for Fiscal Year 2011, Pub. L. No. 111-383, § 542, 124 Stat. 4137, 4218 (2011).

By adding a new category of contempt to cover a person who "willfully disobeys the lawful writ, process, order, rule, decree, or command of the court-martial, court, or military

commission," Congress necessarily indicated that such conduct is not included within the preexisting categories of contempt – which are the only categories that appear in 10 U.S.C. § 950t(31).  As the Ninth Circuit has observed, it is a "'cardinal' canon of statutory interpretation that courts must interpret statutes so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'"  *United States v. Winkles*, 795 F.3d 1134, 1146 (9th Cir. 2015) (per Lamberth, J., sitting by designation) (quoting *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1144-45 (10th Cir. 2004) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).  That "'cardinal' canon" requires construing Article 48(a)(1) and (2) to exclude violations of a court-martial's or commission's orders; to construe them otherwise would render Article 48(a)(3) mere surplusage.  Moreover, "As a principle of statutory construction, we assume from statutory amendments a purpose to change existing law."  *Gill v. Villagomez*, 140 F.3d 833, 836 (9th Cir. 1998).

The Senate Armed Services Committee's report on the National Defense Authorization Act for Fiscal Year 2011 confirms that principle in this context.  The report noted that section 562 of Senate Bill 3454, the Senate-passed version of the National Defense Authorization Act for Fiscal Year 2011, "*adds* willful disobedience of a lawful writ, process, order, rule, decree, or command of a military judge, court of inquiry, the United States Court of Appeals for the Armed Forces, a military Court of Criminal Appeals, a provost court, or military commission as a basis for punishment for contempt."  S. Rep. No. 111-201, at 132-33 (2010) (emphasis added).  That language reflects the Senate Armed Services Committee's understanding – consistent with the general understanding – that such disobedience was not covered by Article 48 absent the 2011 amendment to Article 48.

When Congress adopted the current version of 10 U.S.C. § 950t(31) in 2009, its definition of the contempt offense was identical to that of Article 48.  "[C]ourts generally

19

interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter." *United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) (en banc). Had Congress wished to make willfully disobeying an order subject to the MCA's contempt provision, it easily could have done so by making a similar amendment to § 950t(31). Thus, in choosing not to amend § 950t(31), Congress made a conscious choice to make willfully disobeying an order punishable by contempt in courts-martial and other military commissions, but not in MCA military commissions.

When he found Petitioner in contempt, Respondent Spath appears to have been unaware of these statutory developments and, unfortunately, he forbade Petitioner from bringing them to his attention. *See* Trans., Nov. 1, at 10053 ("I'm denying you the opportunity to be heard."). Respondent Spath referred to "an intentional expansion of the military judge's contempt powers." *Id.* at 10063. He explained, "From 2008 until our current 2016 manual, the power of contempt has evolved." *Id.* at 10062-63. He correctly noted that "if you go back to 2008, there is a nonbinding discussion, and it says that – and this is to the Rule of [sic] Court-Martial [sic] by the way, 809 – it says neither civilian nor military witnesses refusing to testify can be held in contempt." *Id.* at 10063; *see* Discussion, R.C.M. 809, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). He continued, "By 2016 the language related to military witnesses was removed from the nonbinding, and that's important, discussion." Trans., Nov. 1, at 10063. Respondent Spath appeared to be unaware that the language was removed from the R.C.M. 809 discussion because Congress had amended Article 48, but had not enacted any parallel amendment to 10 U.S.C. § 950t(31).

The R.M.C.s themselves confirm that the contempt power is limited to its statutory bounds. The R.M.C.s do not purport to imbue military judges with a general contempt power;

rather, they provide that a "military commission may exercise contempt power *granted under 10 U.S.C. 950t*." R.M.C. 809(a) (emphasis added). Thus, a military commission's contempt power is expressly limited to the contempt offense defined in 10 U.S.C. 950t(31).

The limited reach of the pre-2011 version of Article 48 is confirmed by Colonel William Winthrop's seminal work on military justice, *Military Law and Precedents*. Colonel Winthrop has aptly been called the "Blackstone of Military Law." *Reid v. Covert*, 354 U.S. 1, 19 n.38 (1957). Originally written in 1886 and updated in 1896, Winthrop's treatise described what would occur at Guantanamo more than a century later and stated that it did not constitute contempt under the same statutory language that applies to military commissions today:

> [A]cts not of a violent or disturbing character, though they might constitute contempts at common law and before the civil courts, would not be *disorders* in the sense of the present Article. Thus a quiet refusal by a witness to be sworn, or to answer a proper question on his examination, or a standing mute or simple refusal to testify as all, would not be punishable as a disorder and contempt before a court-martial.

WILLIAM WINTHROP, MILITARY LAW AND PRECEDENTS 309 (2d ed. 1920). The leading court-martial appellate case dealing with this area of the law, *United States v. Burnett*, 27 M.J. 99 (C.M.A. 1988), endorsed Winthrop's narrow construction of the contempt provision.

Consistent with both Winthrop and *Burnett*, the 1912 *Digest of Opinions of the Judge Advocates General of the Army* expressly stated that a court-martial was not authorized to punish a civilian witness for contempt for taking the witness stand and then "declining (without disorder) to testify." DIGEST OF OPINIONS OF THE JUDGE ADVOCATES GENERAL OF THE ARMY 1912, at 162 (1917). The reference to "declining (without disorder) to testify" is a direct repudiation of Respondent Spath's position that a refusal to testify itself constitutes a disorder. *See* Trans., Nov. 1, at 10063-64. For more than a century, it has been firmly established in

21

military law that such a refusal does not constitute a disorder – which is, no doubt, why Congress amended Article 48 (but not Section 950t(31)) in 2011.

Winthrop also explained that exempting a service member's refusal to testify from the ambit of contempt did not result in impunity: "In a case indeed of a military witness, whose duty it clearly was to furnish evidence of material facts of which he was cognizant, a refusal to testify would properly subject him to a charge and trial under Art. 62 [the general article under the Articles of War then in effect]." WINTHROP at 309. Even today, the *Manual for Courts-Martial* prescribes the Article 134 offense of wrongful refusal to testify, which includes the wrongful refusal to testify before a military commission. Pt. IV, ¶108, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). At a court-martial on a charge of violating that provision, however, Petitioner would have had important rights that Respondent Spath erroneously denied him at the contempt proceeding. Moreover, Petitioner would have been able to defend himself at a court-martial by challenging the legality of the orders issued by Respondent Spath. Unfortunately, on November 1, Respondent Spath expressly denied Petitioner that opportunity, as well as the opportunity to explain why Respondent Spath's understanding of the contempt statute was erroneous. *See* Trans., Nov. 1., at 10054-55.10.

Respondent Spath made no finding (nor could the facts possibly support a finding) that Petitioner engaged in conduct that falls within the proper boundaries of the definition of contempt under § 950t(31), the only definition of contempt applicable to the Al Nashiri military commission. None of Petitioner's acts were close to being contemptuous under the contempt definition followed in military commission proceedings convened under the MCA. Rather, Petitioner was exceedingly courteous and respectfully disagreed that Respondent Spath had the

lawful authority to issue any of the orders he announced.  Accordingly, the contempt finding against Petitioner has no legal or factual basis.

Finally, there may be policy reasons why a military commission should have the authority to impose a punishment for violation of its orders or refusal of a witness to testify.  But, if so, the remedy lies with Congress.  Congress could be asked to expand the contempt authority of commissions convened under the MCA, just as it expanded the contempt authority for courts-martial and non-MCA military commissions in 2011.  The remedy was not for Respondent Spath to usurp the very authority that Congress had denied him.  In upholding Respondent Spath's finding of contempt, the convening authority simply failed to address each of the arguments above, despite the fact that they had been raised in Petitioner's submission provided by his counsel to the convening authority.  Appendix K, ¶¶ 2-14.

### 2. A military judge is statutorily precluded from unilaterally imposing a contempt finding.

The plain language of the MCA contains no provision granting a military judge unilateral authority to make a contempt finding.  On the contrary, the MCA clearly forbids it.  Contempt appears in the MCA as one of 32 specified "Crimes triable by military commission."  10 U.S.C. § 950t.  This is a significant departure from the UCMJ, in which Congress expressly provided a military judge with contempt powers and did so by enacting a free-standing article rather than including contempt within the punitive articles.  *Compare id. with* 10 U.S.C. § 848.

Article 48 of the UCMJ, 10 U.S.C. § 848, provides unilateral contempt power not only to military judges in courts-martial, but also to military commission judges.  However, in 2006, Congress expressly exempted commissions tried under the MCA from that authorization of judicial unilateral contempt power.  Military Commissions Act of 2006, Pub. L. No. 109-366, § 4(a)(2), 120 Stat. 2600, 2631.  In 2009, Congress enacted the Military Commissions Act of 2009,

which replaced the entirety of Chapter 47A of title 10, United States Code.  Title XVII, National

Defense Authorization Act for Fiscal Year 2010, Pub. L. No. 111-84, 123 Stat. 2190, 2574.  That

law enacted the current military commissions' contempt offense within a section titled, "Crimes

triable by military commission."  *Id*., § 1802 (enacting 10 U.S.C. § 950t).  In that same statute,

Congress also provided, "No person may be convicted by a military commission under this

chapter of *any offense*, except as provided in section 949i(b) of this title [guilty pleas] or by

concurrence of two-thirds of the members present at the time the vote is taken."  *Id*. (enacting 10

U.S.C. § 949m) (emphasis added).  Thus, because the Military Commissions Act of 2009 defines

contempt as a "Crime[] triable by military commission," Congress has clearly precluded a

conviction of that crime except by a vote of 2/3 of a commission's members.   10 U.S.C.

§ 949m(a).

That requirement was not met in this case.  In clear violation of 10 U.S.C. § 949m,

Respondent Spath purported to find Petitioner guilty of an offense under the MCA without the

concurrence of *any* members, much less two-thirds.

Nor does a commission convened under the MCA have any inherent contempt authority.

As the Court of Military Appeals explained in *Burnett*, "A court-martial is convened on an *ad*

*ho*c basis, and its inherent authority is more questionable than that of a tribunal existing on a

permanent basis."  27 M.J. at 104.  The same is true of military commissions.  The court

continued, "even if a court-martial might otherwise have authority to punish for contempt, we

believe Congress may limit this authority.  In this connection, we attach some significance to the

circumstance that, in drafting Article 48, Congress did not use the broader language that had

been employed in the corresponding section of the Federal Criminal Code."  *Id*.

That reasoning echoes a venerable Opinion of the Attorney General concluding that a court-martial has no contempt authority beyond that provided by statute.  18 Op. Att'y Gen. 278, 281-82 (1885).  This is even more true of military commissions convened under the MCA, for which Congress has even more tightly constrained the contempt authority.  Indeed, as the Eighth Circuit has observed, "The authority of the Article I court is not only circumscribed by the constitution, but limited as well by the powers given to it by Congress."  *In re Mo. Bank, N.A.*, 901 F.2d 1449, 1452 (8th Cir. 1990).

The convening authority did not give due consideration to a military commission's lack of any inherent contempt authority.  The section of the convening authority's action dealing with the contempt finding quoted *Cooke v. United States*, 267 U.S. 517, 534-35, 36 (1925), in support of the proposition that "[c]ourts of law traditionally have held contempt power, particularly within the courtroom itself."  Convening Authority's Action at 5, ¶ 7.  The action quoted a portion of *Cooke* stating, "It has always been so in the courts of the common law . . . ."  *Id.* (quoting *Cooke*, 267 U.S. at 534).  A military commission, however, is not a common law court. Indeed, military law has long emphasized that a "court martial has none of the common-law power to punish for contempt vested in the ordinary courts of justice, but only such authority as is given it by [statute]."  DIGEST OF OPINIONS OF THE JUDGE ADVOCATES GENERAL OF THE ARMY 1912, at 162 (1917).

*Cooke* concerned contempt punishments imposed by the United States District Court for the Northern District of Texas, *id.* at 517, a court imbued with the full panoply of judicial powers provided by Article III of the Constitution as well as by statute.  The military commission at issue here, on the other hand, is solely a creature of statute and is strictly limited by its statutory bounds.  *See*, *e.g.*, *Runkle v. United States*, 122 U.S. 543, 556 (1887).  The convening authority's

failure to appreciate that Respondent Spath's power was confined to that which Congress gave him may have led to his legally erroneous conclusion.

Moreover, the convening authority failed to address the fact that the statutory authority to find contempt in Article 47A proceedings vests that authority with military commissions as a whole (requiring a two-thirds vote), not with individual judges.  The R.M.C.s cannot grant a single military judge authority that Congress chose not to grant to military judges.

When he found Petitioner in contempt, Respondent Spath presumably relied on R.M.C. 809(c), which provides that the "military judge shall in all cases determine whether to punish for contempt and, if so, what the punishment shall be."  That provision, if read as it was by the military judge to authorize unilateral contempt findings, however, would be invalid.  When Congress delegated commission rule-making authority to the Secretary of Defense, Congress expressly provided, "Such procedures may not be contrary to or inconsistent with this chapter." 10 U.S.C. § 949a(a).  A military judge's unilateral exercise of the power to find an individual in violation of 10 U.S.C. § 950t(31) is contrary to and inconsistent with 10 U.S.C. § 949m. Respondent Spath's unilateral contempt finding is, therefore, unlawful.  While this defect was brought to his attention, *see* Appendix K at ¶¶ 15-22, the convening authority simply failed to address this legal deficiency in Respondent Spath's contempt finding.

### 3. The summary contempt procedures employed by Respondent Spath violated the MCA.

Respondent Spath's use of summary procedures was inconsistent with the MCA.  Section 948q requires that "[c]harges and specifications against an accused in a military commission under this chapter shall be signed by a person subject to chapter 47 of this title under oath before a commissioned officer of the armed forces authorized to administer oaths . . . ."  10 U.S.C. § 948q(a).  The same section also requires that once charges and specifications are sworn, "the

accused shall be informed of the charges and specifications against the accused as soon as practicable." *Id.*, § 948q(b).   In violation of those statutory provisions, Respondent Spath purported to summarily try Petitioner for what the MCA itself defines as a crime triable by military commission without any sworn charges or service of such charges.   Moreover, Section 948s requires that a trial counsel "cause to be served upon the accused and military defense counsel a copy of the charges upon which trial is to be had . . . sufficiently in advance of trial to prepare a defense."   10 U.S.C. § 948s.   Again, Respondent Spath purported to summarily try Petitioner for what the MCA defines as a crime triable by military commission without complying with this statutory prerequisite – or even allowing Petitioner to be represented by counsel, as that provision clearly contemplates.   To the extent that any provision of the R.M.C. may be read as disposing with those clear statutory requirements, it is invalid due to its inconsistency with the MCA.   *See* 10 U.S.C. § 949a ("Such procedures may not be contrary to or inconsistent with this chapter").

Enforcement of those statutory requirements is particularly appropriate here because summary contempt proceedings are "regarded with disfavor."   *Taylor v. Hayes*, 418 U.S. 488, 498 (1974) (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)).   As the Court emphasized, "[We] have stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence.'"   *Id.* (quoting *Groppi v. Leslie*, 404 U.S. 496, 502 (1972) (quoting *In re Oliver*, 333 U.S. 257, 273 (1948))).   The Court also noted, "Even where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.'"   *Id.* (quoting *Groppi*, 404 U.S. at 504).   Congress avoided such disfavored proceedings by requiring certain minimal procedural requirements in the trial of

*every* offense under the MCA, including contempt.  Any provision in the R.M.C.s purporting to do away with those statutory protections in contempt cases is invalid.  *See* 10 U.S.C. § 949a ("Such procedures may not be contrary to or inconsistent with this chapter").

Moreover, even if summary procedures were authorized, that did not justify Respondent Spath's express refusal to receive a written submission from Petitioner, his refusal to allow Petitioner to speak, or his express statement that he was denying Petitioner any opportunity to be heard.  The 1912 *Digest of Opinions of the Judge Advocates General of the Army* discussed the procedures that should be followed in summary contempt proceedings and – tellingly – those procedures included a right to allocution:

> Where a contempt within the description of this article has been committed, and the court deems it proper that the offender shall be punished, the proper course is to suspend the regular business, and, *after giving the party an opportunity to be heard, explain, etc.,* to proceed – if the explanation is insufficient – to impose a punishment; resuming thereupon the original proceedings.

Digest of Opinions of the Judge Advocates General of the Army 1912, at 162 (1917) (emphasis added) (footnote omitted).  Nothing in R.M.C. 809 even purports to allow a military judge to conduct a commission summary contempt proceeding without giving the accused contemnor an opportunity to be heard – an opportunity that is a well-established component of military contempt proceedings.  Turning again to the Blackstone of Military Law, in direct contempt proceedings, "[o]pportunity is properly given the offender to present anything he may have to offer in excuse or explanation of his language or behaviour, but beyond this no formality whatever is called for."  William Winthrop, Military Law and Precedents 310 (2d ed. 1920).  Winthrop continued:

> The proceeding will consist mainly in the court announcing to the party, through its president, that he is held to have committed a contempt within the description of [Article 86 of the Articles of War], and that it is proposed to punish him for the

same unless explained away, and calling upon him to make any explanation or statement he may have to offer.

*Id.* at 311.

Respondent Spath unlawfully omitted a crucial portion of a military summary contempt proceeding.  That deprivation directly prejudiced Petitioner.  In addition to the legal arguments set forth in this brief, Petitioner would have offered the defense that Respondent Spath had no lawful authority to issue either of the orders that formed the basis for the contempt finding.  The first of Respondent Spath's two justifications for his contempt finding was that Petitioner "willfully refused to obey the commission's order to rescind your excusal of counsel."  Trans., Nov. 1, at 10061.  Yet nothing in the MCA or the R.M.C.s provides commission military judges with any authority to compel specific actions from Executive Branch officials, such as Petitioner.  Even the convening authority observed that "it is arguable whether the military judge possessed the authority to order [Petitioner] to rescind" his memorandum excusing counsel from the Al Nashiri case.  Convening Authority's Action, at 6, ¶12.

The other basis for the contempt finding was that Petitioner purportedly "willfully refused to obey the commission's order to testify."  Trans., Nov. 1, at 10061.  But Petitioner was never properly compelled to testify.  Quite properly in a military context, the R.M.C.s empower a military witness's commander, not the military judge, to compel testimony.  R.M.C. 703(e)(1).  Respondent Spath sought to exercise authority he does not have when he purported to require Petitioner to testify.   Quite simply, he usurped the authority of Petitioner's commander.  Petitioner was under no legal obligation to comply with Respondent Spath's unlawful order.  Respondent Spath erred when he deprived Petitioner of any opportunity to explain why his respectfully announced refusal to obey the military judge's ultra vires orders was not contemptuous.

Because Respondent Spath purported to find Petitioner had committed the criminal offense of contempt without complying with congressionally established procedural protections – or even the well-established baseline procedures for a military summary contempt proceeding – the contempt finding is unlawful.   Again, while this defect was brought to his attention, Appendix K at ¶ 23, the convening authority failed to address this additional reason that Respondent Spath's contempt finding was unlawful.

### 4.     Respondent Spath violated Petitioner's due process rights by resorting to summary contempt procedures.

"MJ:  I am denying you the opportunity to be heard.  Thank you."[11]

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

Respondent Spath provided Petitioner with no advance notice of the purported acts of contempt he would consider at the November 1 hearing.  As set out in this filing, Petitioner had multiple potential defenses to a contempt finding.   He attempted to submit a written filing concerning the contempt proceeding several hours before the hearing on November 1.   But Respondent Spath rejected that filing, stating that Petitioner was a third party – though he plainly was not a third party to his own contempt proceeding.  *See* Appendix G.  Petitioner attempted to offer a defense at the commission hearing, but the military judge explicitly told him he was denying Petitioner the opportunity to be heard and told him to sit down.  Trans., Nov. 1, at 10054-55.  Respondent Spath then held Petitioner in contempt without ever allowing him to be heard, not because the circumstances prevented a full and fair hearing, but merely because

---

[11] Trans., Nov. 1, 2017, at 10054.

Respondent Spath did not want to give Petitioner the opportunity to state his case on the record. That striking departure from American judicial norms is starker still when it came in the context of a military commission and when it resulted in the deprivation of liberty of a United States citizen.

The Supreme Court has recognized a narrow exception to the basic due process requirements of notice and an opportunity to be heard in the case of direct contempts. *See Ex Parte Terry*, 128 U.S. 289 (1888).  That exception, however, is disfavored.  *Taylor*, 418 U.S. at 498.  Such summary procedures may be used without violating the Constitution only in narrow circumstances that were not present in this case.  The Supreme Court has emphasized that discarding notice and an opportunity to be heard is constitutionally permissible in summary contempt proceedings only when the conduct at issue "created 'an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public' that, if 'not instantly suppressed and punished,' demoralization of the court's authority will follow.'"  *In re Oliver*, 333 U.S. 257, 275 (1948) (quoting *Cooke v. United States*, 267 U.S. 517, 536 (1925)).  Here, that was not the case.  There was no need to instantly suppress and punish Petitioner's conduct, as demonstrated by the fact that Respondent Spath did not instantly hold a contempt proceeding.  Rather, there was more than a 24-hour delay between the purported contempt and the summary contempt proceeding.

Where, as here, there is a delay between the purported contempt and the summary contempt proceedings, "due process notice and hearing protections attach."  *United States v. Glass*, 361 F.3d 580, 588-89 (9th Cir. 2004).  That is because, "when final adjudication and sentence are postponed" to a later date, "[t]he usual justification" for summary proceedings "of necessity . . . is not nearly so cogent."  *Taylor*, 418 U.S. at 497.  Respondent Spath recognized as

31

much—after observing the allegedly contemptuous conduct, he did not purport to find Brigadier General Baker guilty on the spot. Trans., Oct. 31, at 10042-44.  All he said was, "We'll talk more tomorrow."  *Id.*  Moreover, there were no ongoing trial proceedings scheduled between the time of the purported contempt and the summary contempt proceeding nor were there any time constraints on the November 1 hearing, which adjourned at 12:50 p.m.  Trans., Nov. 1, at 10074. There were no commission proceedings at all the day following the summary contempt proceeding.  There was no exigency demanding an on-the-spot contempt proceeding, leaving ample time for the bare minimum of due process: notice and an opportunity to be heard.  By denying Brigadier General Baker those rights with no exigent need to do so, Respondent Spath, therefore, violated Petitioner's due process rights.  Respondent Spath's resort to summary proceedings prejudiced Petitioner by depriving him of any opportunity to assert the substantial challenges to a finding of contempt available to him.

### 5.      The military commission had no personal jurisdiction over Petitioner.

The jurisdiction of a military commission convened under the MCA is tightly constrained by statute.  *See*, *e.g.*, *Runkle*, 122 U.S. at 556.  Indeed, military tribunals in general are tribunals of special and limited jurisdiction, which must be convened and conducted strictly in accordance with their authorizing statutes.  *See id.*

Congress has provided, "A military commission [convened under chapter 47A of title 10, U.S. Code] shall have jurisdiction to try *persons subject to this chapter* for any offense made punishable by this chapter, sections 904 and 906 of this title (articles 104 and 106 of the Uniform Code of Military Justice), or the law of war . . . ."  10 U.S.C. § 948d (emphasis added).  The MCA defines "Persons subject to military commissions":  "Any alien unprivileged enemy belligerent is subject to trial by military commission as set forth in this chapter."  10 U.S.C. § 948c.

While the offense of contempt can be committed by "any person," 10 U.S.C. § 950t(31), the question of who can be found to commit an offense is one of subject matter jurisdiction. The ability to try an individual for that offense also requires personal jurisdiction. Section 948d defines such personal jurisdiction, with reference to § 948c. A military commission has no statutory authority to exercise personal jurisdiction over a United States citizen, since such a citizen cannot fall within § 948c's "alien" requirement. Petitioner is not an alien. Nor, obviously, is he an unprivileged enemy belligerent. Accordingly, the Al Nashiri commission had no personal jurisdiction over him. Respondent Spath's contempt finding was, therefore, unlawful.

### Conclusion

For the foregoing reasons, this Honorable Court should grant the petition and vacate Respondent Spath's unlawful contempt finding, which was erroneously upheld by the convening authority.

Respectfully Submitted:

_____/s/_____

Barry J. Pollack (D.C. Bar #434513)
Addy R. Schmitt (D.C. Bar #489094)
MILLER & CHEVALIER CHARTERED
900 16th Street, N.W.
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: bpollack@milchev.com
          aschmitt@milchev.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 1st day of December, 2017, a true and genuine copy of the Supplemental Brief in Support of Petitioner's Motion For Habeas Relief was sent via electronic mail by the Court's CM/ECF system to the following:

> Andrew I. Warden
> U.S. Department of Justice
> Federal Programs Branch
> Andrew.warden@usdoj.gov
>
> Terry Marcus Henry
> U.S. Department of Justice
> Federal Programs Branch
> Terry.henry@usdoj.gov


                                         /s/
                              _____
                              Barry J. Pollack