IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRIGADIER GENERAL JOHN G. BAKER, UNITED STATES MARINE CORPS, | ) ) ) | CIVIL ACTION |
| *Petitioner*, | ) ) | (HABEAS CORPUS) |
| v. | ) ) | No. 17-CV-2311 (RCL) |
| COLONEL VANCE SPATH, UNITED STATES AIR FORCE, In his Official Capacity, and | ) ) ) ) | |
| JAMES MATTIS, SECRETARY OF DEFENSE, In his Official Capacity, | ) ) ) | |
| *Respondents*. | ) | |

**PETITIONER BRIGADIER GENERAL BAKER'S REPLY TO
RESPONDENTS' OPPOSITION TO PETITIONER'S SUPPLEMENTAL BRIEF
IN SUPPORT OF PETITIONER'S MOTION FOR HABEAS RELIEF
AND PETITIONER'S REQUEST FOR EXPEDITED CONSIDERATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

Developments Since the Filing of Petitioner's Supplemental Brief ............................... 3

ARGUMENT ................................................................................................................... 4

I.    The actions on which Respondent Judge Spath based his contempt finding
      did not meet the statutory definition of contempt. .............................................. 4

      A.    Brigadier General Baker did not disturb the October 31, 2017
            proceedings before Judge Spath. ............................................................ 5

      B.    Brigadier General Baker did not engage in any conduct
            constituting "disorder." ........................................................................... 8

II.   There are no military commission system remedies Petitioner must
      exhaust. ............................................................................................................... 11

      A.    There is no on-going proceeding for which comity could require
            deference. ................................................................................................ 12

      B.    The CMCR does not have jurisdiction to hear a mandamus petition
            from Petitioner. ....................................................................................... 12

      C.    Even if the CMCR could entertain a mandamus petition from
            Petitioner, he is not required to exhaust that remedy in order to
            obtain relief from this Court. ................................................................... 14

III.  Petitioner's habeas petition is not moot. ........................................................... 15

      A.    Continuing collateral consequences are presumed because
            petitioner challenges a finding of guilty to a criminal offense. .............. 15

      B.    Petitioner has demonstrated continuing collateral consequences
            from the contempt finding. ..................................................................... 17

IV.   The Military Commissions Act of 2009 forbids a military judge from
      exercising unilateral contempt power. ............................................................... 20

      A.    Section 950t(31) requires contempt to be tried before a full military
            commission. ............................................................................................. 20

      B.    *Chevron* deference is inapplicable where, as here, the statute being
            construed is unambiguous. ....................................................................... 23

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advocate Health Care Network v. Stapleton*,
  137 S. Ct. 1652 (2017)..................................................................................................10

*Bloom v. Illinois*,
  391 U.S. 194 (1968)......................................................................................................16

*Brewer v. Dahlberg*,
  942 F.2d 328 (6th Cir. 1991) ......................................................................................14

*Burton v. Oliver*,
  599 F.2d 49 (5th Cir. 1979) ........................................................................................15

*Chevron, U.S.A. v. Natural Resources Defense Council*,
  467 U.S. 837 (1984).................................................................................2, 23, 24, 25

*Clinton v. Goldsmith*,
  526 U.S. 529 (1999)......................................................................................................12

*Cobb v. Wainwright*,
  666 F.2d 966 (5th Cir.), *cert. denied*, 457 U.S. 1107 (1982)................................15

*Crandon v. United States*,
  494 U.S. 152 (1990).......................................................................................................24

*Dooley v. Ploger*,
  491 F.2d 608 (4th Cir. 1974) ......................................................................................14

*Gill v. Villagomez*,
  140 F.3d 833 (9th Cir. 1998) .......................................................................................21

*Gul v. Obama*,
  652 F.3d 12 (D.C. Cir. 2011) ......................................................................................16

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006)................................................................................................12, 14

*Idema v. Rice*,
  478 F. Supp. 2d 47 (D.D.C. 2007) .............................................................................18

*U.S. ex rel. Johnson v. McGinnis*,
  734 F.2d 1193 (7th Cir. 1984) ....................................................................................14

*Kloeckner v. Solis,*
    568 U.S. 41 (2012).................................................................................23

*Lane v. Williams,*
    455 U.S. 624 (1982)....................................................................17, 18, 19

*Loving v. United States,*
    517 U.S. 748 (1996).................................................................................24

*McBryde v. Comm. to Review Cir. Council Conduct & Disability Orders of the
    Judicial Conf. of the U.S.,* 264 F.3d 52 (D.C. Cir. 2001) .......................19

*McDonnell v. United States,*
    136 S. Ct. 2355 (2016)...............................................................................8

*Milner v. Dep't of the Navy,*
    562 U.S. 562 (2011).................................................................................21

*Nakell v. Att'y Gen. of N.C.,*
    15 F.3d 319 (4th Cir. 1994) ................................................................19, 20

*Nat'l Ass'n for Home Care & Hospice v. Burwell,*
    142 F. Supp. 3d 119 (D.D.C. 2014).........................................................25

*O'Sullivan v. Boerckel,*
    526 U.S. 838 (1999).................................................................................15

*Obaydullah v. Obama,*
    609 F.3d 444 (D.C. Cir. 2010)............................................................12, 14

*In re Oliver,*
    333 U.S. 257 (1948).................................................................................25

*Oyler v. Allenbrand,*
    23 F.3d 292 (10th Cir. 1994) ...................................................................17

*Puerto Rico v. Franklin Cal. Tax-Free Trust,*
    136 S. Ct. 1938 (2016)...............................................................................21

*Schlesinger v. Councilman,*
    420 U.S. 738 (1975).................................................................................12

*Seaton v. Kentucky,*
    92 F. App'x 174 (6th Cir. 2004) ...............................................................14

*Sibron v. New York,*
    392 U.S. 40 (1968)...............................................................................17, 18

iii

*Spencer v. Kemna,*
    523 U.S. 1 (1998) ....................................................................................................16, 17

*United States v. Bass,*
    404 U.S. 336 (1971) ........................................................................................................11

*United States v. Fadayini,*
    28 F.3d 1236 (D.C. Cir. 1994) .......................................................................................18

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ..................................................................................................23, 24

*United States v. Moreno,*
    63 M.J. 129 (C.A.A.F. 2006) ...........................................................................................4

*United States v. Ron Pair Enters., Inc.,*
    489 U.S. 235 (1989) ........................................................................................................21

*United States v. Santos,*
    553 U.S. 507 (2008) ........................................................................................................11

*United States v. Schaeffer,*
    523 U.S. 303 ...................................................................................................................24

*United States v. Wilson,*
    76 M.J. 4 (C.A.A.F. 2017) .............................................................................................24

*Walker v. Zant,*
    693 F.2d 1087 (11th Cir. 1982) .....................................................................................15

*Zal v. Steppe,*
    968 F.2d 924 (9th Cir. 1992), *as amended* (July 31, 1992) ....................................19, 20

**Statutes**

5 U.S.C. § 551 ...................................................................................................................24

10 U.S.C. § 848 ...........................................................................................................1, 4, 10

10 U.S.C. § 850t .........................................................................................................5, 10

10 U.S.C. § 852 ...............................................................................................................22

10 U.S.C. § 916 .................................................................................................................9

10 U.S.C. § 949a .............................................................................................................23

10 U.S.C. § 949m .............................................................................................................20

10 U.S.C. § 950f ........................................................................................................13

10 U.S.C. § 950t...............................................................................2, 1, 8, 9, 11, 15, 20, 21, 22

10 U.S.C. § 950w ...............................................................................................21, 22

18 U.S.C. § 232 ................................................................................................................9

18 U.S.C. § 2102 ..............................................................................................................9

Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ......................20, 21, 22

## Other Authorities

Devon Chafee, *Military Commissions Revived:  Persisting Problems of Perception*, 9 Univ. N.H. L. Rev. 237 (2011)...........................................................24

Manual for Courts-Martial (2016 ed.) ...............................................................................9

Manual for Courts-Martial, United States (2008 ed.) .....................................................10

Rule for Military Commission 809 .............................................................................10, 14

S. Rep. No. 111-201 (2010) .............................................................................................11

SECNAV Instruction 1401.4A, CONSIDERATION OF CREDIBLE INFORMATION FOR AN ADVERSE NATURE BY GENERAL OR FLAG OFFICER SELECTION BOARDS, ¶ 6.a (14 Feb. 2007), https://doni.documentservices.dla.mil/Directives/01000%20Military%20Personnel%20Support/01-400%20Promotion%20and%20Advancement%20Programs/1401.4A.pdf............................19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRIGADIER GENERAL JOHN G. BAKER,<br>    UNITED STATES MARINE CORPS,<br><br>                                    *Petitioner*,<br><br>v.<br><br>COLONEL VANCE SPATH, UNITED STATES<br>    AIR FORCE,<br>    In his Official Capacity, and<br><br>JAMES MATTIS, SECRETARY OF DEFENSE,<br>    In his Official Capacity,<br><br>                                    *Respondents*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>(HABEAS CORPUS)<br><br>No. 17-CV-2311 (RCL) |

**PETITIONER BRIGADIER GENERAL BAKER'S REPLY TO
RESPONDENTS' OPPOSITION TO PETITIONER'S SUPPLEMENTAL BRIEF
IN SUPPORT OF PETITIONER'S MOTION FOR HABEAS RELIEF
AND PETITIONER'S REQUEST FOR EXPEDITED CONSIDERATION**

Petitioner Brigadier General John G. Baker, by and through his undersigned counsel,

pursuant to this Court's scheduling order of December 18, 2017, files this reply to Respondents'

opposition to Petitioner's supplemental brief in support of Petitioner's motion for habeas relief.

None of the Respondents' arguments in opposition to Petitioner's request for habeas relief have

merit.   First, the Respondent's Opposition implicitly concedes that in order to be held in

contempt in a military commission at Guantanamo, it is insufficient that the alleged contemnor

"willfully disobeys" an order of the military commission, as would suffice under the statute

governing courts-martial and other military commissions, 10 U.S.C. § 848; rather, contempt in a

military commission at Guantanamo requires, under 10 U.S.C. § 950t(31), a finding that the

alleged contemnor "disturbs" the proceedings by "riot or disorder."   In an attempt to satisfy this

standard, Respondents argue the contempt finding against Brigadier General Baker should not be

set aside because his conduct constituted disturbing the proceedings by "disorder."   *See* Respondents' Opposition to Petitioner's Supplemental Brief ("Opp.") at pp. 39-44.   Disobeying an order, however, even when doing so might have consequences on how the underlying proceedings are conducted going forward, does not constitute "disorder."   Rather, "disorder," read in conjunction with "riot," refers to acts involving an assemblage of people engaging in tumultuous, contentious, or turbulent behavior or threatening violence.   Respondents make no argument, and of course could not make any argument, that Brigadier General Baker engaged in such conduct.

Next, in an effort to avoid the conclusion that this Court would reach if it addressed the merits – Brigadier General Baker engaged in no conduct that could possibly satisfy the relevant statutory definition of contempt – Respondents spend the bulk of their brief attempting to avoid the merits.   Respondents argue that Petitioner failed to exhaust his remedies because, even though he appealed the contempt finding to the convening authority whose decision under the Rules for Military Commissions is final, ((R.M.C. 809(d) ("The action of the convening authority is not subject to further review or appeal")), Brigadier General Baker has not sought mandamus review by the Court of Military Commission Review (CMCR).   Respondents also argue that the pending habeas petition is moot, because there is no presumption that a criminal contempt finding results in collateral consequences and, according to Respondents, Petitioner's proffered collateral consequences are "too speculative."

As set forth below, Brigadier General Baker is not subject to any requirement that he further exhaust review in the military system.   The on-going consequences of the unlawful contempt finding are presumed and, in any event, are not speculative.   Brigadier General Baker's supplemental brief included a sworn declaration setting forth in detail numerous collateral

consequences.  Events since the filing of that brief have demonstrated that such consequences are

not only not speculative, but also that some of the collateral consequences are imminent.  Indeed,

because such consequences are imminent, Brigadier General Baker respectfully asks this Court

to expedite its consideration of this matter and grant his habeas petition as soon as possible.

<u>Developments Since the Filing of Petitioner's Supplemental Brief</u>

A board to select the next Staff Judge Advocate to the Commandant of the Marine Corps

will convene on February 7, 2018.  MARADMIN 8-18 (Jan. 4, 2018) (Appendix P).  Petitioner is

in the "primary zone" for consideration by the board.  *Id*. ¶ 3.[1]  On January 3, 2018, Petitioner

received notification from the Commandant of the Marine Corps of "credible information of an

adverse nature."  *See* Letter from Commandant of the Marine Corps to Brigadier General John

G. Baker, Subject:  Notification of Credible Information of an Adverse Nature to be Presented to

the FY19 Staff Judge Advocate to the Commandant of the Marine Corps Selection Board (3 Jan.

18) (Appendix Q).

The description of that adverse information was not confined to a description of Brigadier

General Baker's conduct before Judge Spath.  To the contrary, the conclusion that there is

adverse information relating to Brigadier General Baker was explicitly premised on the fact that

Judge Spath found Brigadier General Baker guilty of contempt.

> On 1 November 2017, the military judge held summary contempt proceedings and
> held Brigadier General Baker in contempt, finding beyond a reasonable doubt that
> Brigadier General Baker's acts "constituted disorders that disturbed these
> proceedings, disorders that disturbed these proceedings significantly."  After
> finding him in contempt, the military judge sentenced Brigadier General Baker to
> 21 days of confinement (to quarters) and a $1000 fine.  The convening authority
> (the Director of the Office of Military Commissions) approved the contempt
> findings but remitted the fine and all of the confinement except the three days that

---

[1]  Petitioner is identified in ¶ 3.a by his permanent grade of colonel; his current grade of brigadier general
is a temporary grade held while serving in the position of Chief Defense Counsel of the military
commissions system.  *See* Appendix N to Supplemental Brief in Support of Petitioner's Motion for
Habeas Relief, filed Dec. 1, 2017.

Brigadier General Baker had already served. The contempt finding and Brigadier General Baker's confinement received significant media attention. Upon his confinement, Brigadier General Baker filed a habeas corpus motion in the United States District Court for the District of Columbia, and, after the convening authority's action, filed a motion to vacate the contempt finding. As of 27 December 2017, that motion remains pending.

Enclosure (2) (Appendix R) (filed under seal) to the Notification.[2]

Additionally, Petitioner's supplemental brief noted that, on November 22, 2017, Petitioner's detailed military defense counsel asked the convening authority whether he planned to refer Petitioner's case to the CMCR and that as of the date of that filing (December 1, 2017), the convening authority had not responded. *See* Petitioner's Supplemental Brief at 9. Now, 57 days after the convening authority took his action and 56 days after that request, the convening authority still has not responded. In the court-martial system, a presumption of unreasonable delay arises where the prosecution fails to docket a case with the Court of Criminal Appeals within 30 days of the convening authority's action. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006).

**ARGUMENT**

**I.     The actions on which Respondent Judge Spath based his contempt finding did not meet the statutory definition of contempt.**

Respondents in their supplemental opposition do not contest the fact that in 2011, Congress amended 10 U.S.C. § 848 to expand the definition of the conduct in a court-martial or a typical military commission that constitutes contempt to include willfully disobeying an order (§ 848(a)(3)) and that no such expansion was included in 10 U.S.C. § 850t(31), which defines

---

[2]  Enclosure (1) to the Notification is a transcript of the *al Nashiri* military commission's sessions of October 31, 2018 and November 1, 2018, along with accompanying exhibits. That enclosure will not be submitted to the promotion selection board. Likewise, Enclosure (1), which is voluminous, is not appended to this reply brief. Petitioner will promptly furnish it to the Court upon request. Enclosure (2) (Appendix R) is a "briefing summary" of credible adverse information that will be provided to the promotion selection board if the Assistant Secretary of the Navy for Manpower and Reserve Affairs "confirms that the information contained in enclosure (1) is adverse." Appendix Q ¶ 3.

contempt in a Guantanamo military commission.  Nor do Respondents contest that the obvious import of this 2011 congressional action is that disobeying an order in a Guantanamo military commission does not constitute contempt.  Rather, contempt in a Guantanamo military commission is confined to that which would have constituted contempt prior to 2011 in a court-martial or other military commission, *i.e.*, disturbing a proceeding by "riot or disorder."[3] Accordingly, Respondents have implicitly conceded that Brigadier General Baker could not be lawfully held in contempt solely for disobeying Judge Spath's orders and, instead, for the contempt finding to stand, it must be shown that Brigadier General Baker participated in a "riot" or "disorder" as those terms are used in the context of § 850t(31).

Respondents do not attempt to argue that Brigadier General Baker participated in a riot. Thus, they are left attempting to demonstrate that he disturbed the proceedings by engaging in "disorder."  Respondents are incorrect both in arguing that Brigadier General Baker disturbed the proceedings and in arguing that he engaged in disorder.

### A.    Brigadier General Baker did not disturb the October 31, 2017 proceedings before Judge Spath.

Respondents base their argument that a single military judge, as opposed to the military commission as a whole, has the authority to hold any person in contempt and, indeed to do so in summary fashion, on the premise that there is no need for fact-finding because the conduct at issue occurs in the presence of the military judge.  Yet, Respondents point to no conduct by Brigadier General Baker that occurred in front of Judge Spath on October 31, 2017 that disturbed the proceedings.  Rather, the proceedings before Judge Spath in which Brigadier General Baker participated, by Respondents' own account, progressed in an orderly fashion.  At the October 31, 2017 proceeding, Judge Spath made findings that no good cause warranted the excusal of

---

[3]  Respondents do not argue that Brigadier General Baker used "any menacing word, sign, or gesture," the alternative statutory basis for a contempt finding.

defense counsel, there was no ethical basis for defense counsel to withdraw, and that excusal of counsel would prejudice the defendant's rights.  Opp. at 5.  After making these findings, Judge Spath called Brigadier General Baker as a witness.  Brigadier General Baker asserted privilege and declined to testify.  *Id.* at 5-6.  Judge Spath then ordered Brigadier General Baker to rescind his decision approving the withdrawal of defense counsel.  Brigadier General Baker declined to follow that order.  *Id.* at 6-7.  Judge Spath then stated that a contempt hearing would be held the following day.  At no time during the October 31st proceeding did Brigadier General Baker disrupt the proceedings by creating a noise or other disturbance.  Rather, Brigadier General Baker simply declined to obey orders by Judge Spath that he believed to be unlawful.

Respondents take issue with Brigadier General Baker's characterization of his behavior as respectful and append a declaration from one of the prosecutors in the *al Nashiri* military commission characterizing Brigadier General Baker as having "scoffed with a slight laugh" before declining to obey an order.  The declarant does not contend that Brigadier General Baker raised his voice or otherwise caused a disturbance.  Indeed, the declarant concedes, that in declining to obey Judge Spath's order, Brigadier General Baker addressed the Court as "Your Honor."  *See* Wells Decl. ¶ 44.

Judge Spath made no finding, either that day or the next day at the summary contempt proceeding, that Brigadier General Baker scoffed, laughed, or in any other manner was disrespectful of the Court.  Rather, Judge Spath simply found that Brigadier General Baker had disobeyed his orders:

> I find, beyond a reasonable doubt, that on 31 October 2017 you willfully refused to obey the commission's order to rescind your excusal and that that behavior was contemptuous to the commission and it was in front of the commission.  Your refusal to testify on multiple occasions in my presence is also contemptuous and contemplated by the Manual for Courts-Martial and the Military Commissions Act as an act of contempt and a disorder.

Nov. 1, 2017 Tr. at 10063.  Judge Spath premised his contempt finding on the disobeying of orders, not on any finding that Brigadier General Baker scoffed or slightly laughed, much less any finding that scoffing or slight laughing disturbed the proceedings.

Brigadier General Baker disagrees with the declarant's characterizations, which are not reflected by the transcript of the proceeding – a transcript that counsel for the prosecution was required to review, and did review, for accuracy before the military certified that the transcript accurately reflects the proceedings.  *See* R.M.C. 1103; *see also* Errata Sheet (reflecting that trial counsel reviewed the record on November 1, 2017, and proposed no relevant changes to the record) and Authentication of Record ("I examined pages 10031 thru 10088 in the Record of Trial in the above referenced case and find that they accurately report the proceedings. I authenticate pages 10031 thru 10088 of this Record of Trial, a contempt proceeding, for the purpose of review by the Convening Authority in accordance with R.M.C. 809(d).") (signed by Judge Spath and dated Nov. 2, 2017) (Appendix S).

But, in any event, Respondents do not argue that Brigadier General Baker's demeanor in front of Judge Spath disturbed the proceedings.  Rather, they argue that the proceedings were disturbed because "**[f]ollowing** the contempt proceedings," defense counsel did not appear and, as a result, the court chose to re-schedule hearings.  *Id.* at 7-8 (emphasis added).  Thus, the purported disturbance of the proceedings was not based on Brigadier General Baker's demeanor or conduct *at* the hearing on October 31, 2017 (for which he was held in contempt on November 1, 2017), but rather based on the subsequent action of defense counsel in not appearing and the

subsequent decision of Judge Spath, based on this subsequent non-appearance, to delay additional, *future* proceedings.[4]

### B.    Brigadier General Baker did not engage in any conduct constituting "disorder."

Not only does the record demonstrate no disturbance of the proceedings that took place on October 31st before Judge Spath, but the record also demonstrates that Brigadier General Baker engaged in no conduct at that hearing that constituted "disorder." Title 10 U.S.C. § 950t(31) uses the word "disorder" in conjunction with the word "riot." It is a fundamental canon of statutory construction that when words are listed together in a statute, they are interpreted to be of the same or similar class. *See, e.g.*, *McDonnell v. United States*, 136 S. Ct. 2355, 2368-69 (2016) ("Under the familiar interpretive canon noscitur a sociis, 'a word is known by the company it keeps.'"). For purposes of the Uniform Code of Military Justice (UCMJ), the President has defined "riot" as follows:

> a tumultuous disturbance of the peace by three or more persons assembled together in furtherance of a common purpose to execute some enterprise of a private nature by concerted action against anyone who might oppose them, committed in such a violent and turbulent manner as to cause or be calculated to cause public terror. The gravamen of the offense of riot is terrorization of the public. It is immaterial whether the act intended was lawful. Furthermore, it is not necessary that the common purpose be determined before the assembly. It is sufficient if the assembly begins to execute in a tumultuous manner a common purpose formed after it assembled.

---

[4]  Respondents cite a phrase used by Judge Spath, "havoc and disorder," in arguing that Judge Spath found that Brigadier General Baker's conduct disturbed the proceedings. Opp. at 40. In doing so, they mischaracterize the record. Notably, Respondents do not cite the transcript of the October 31st hearing. Rather, they cite the declarant's *recollection* of what happened *after* the hearing. (Respondents incorrectly cite Wells Decl. ¶ 44, in which the declarant described his recollection of what occurred at the October 31st hearing; in fact, the declarant referenced the "havoc and disorder" phrase in ¶ 48, in which the declarant described what happened after the November 1st summary contempt hearing.) Judge Spath made no finding that Brigadier General Baker did anything on October 31st that caused "havoc and disorder." Rather, he made the observation generally that if counsel for litigants disobeyed orders, there would be "havoc and disorder." *See* Nov. 1, 2017 Tr. at 10059-60 ("The misconduct is when you disobey. Why? Because, again, as you've probably noticed from this theme, rules to the contrary cause disorder and havoc in any system you've got, and that is exactly what is happening here.")

Para. 141.c(1) of Part IV of the Manual for Courts-Martial (2016 ed.) (defining "riot" under Art. 116 of the UCMJ, 10 U.S.C. § 916, which proscribes causing or participating in a riot or breach of the peace).[5]

Accordingly, the rules of statutory construction require "disorder," as that term is used in § 950t(31), to be defined in a manner that is akin to violence or the threat of violence involving multiple people and which causes or can be calculated to cause public terror.  And, indeed, under military law, "disorderly conduct" is defined as

> conduct of such a nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby.  It includes conduct that endangers public morals or outrages public decency and any disturbance of a contentious or turbulent character.

Para. 73.c(2) of Pt. IV of the Manual for Courts-Martial (2016 ed.).  Under the civilian federal criminal code, "civil disorder" is defined as follows: "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."  18 U.S.C. § 232.

Respondents offer no definition of disorder that contemplates a group of people, the threat of violence, affecting peace and quiet, or anything of a contentious or turbulent character.

---

[5]  "Riot" is likewise defined under the civilian federal criminal code to involve more than one person and violence or the threat of violence:

> [T]he term "riot" means a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

18 U.S.C. § 2102(a).

Rather, in circular fashion, they define disorder (without reference to any statute) to encompass willfully disobeying an order, the very conduct that Respondents concede Congress chose to add in 2011 to the definition of conduct constituting contempt in other military proceedings and not to add to the definition of contempt in Guantanamo military commissions.  If, as Respondents appear to contend, "riot or disturbance" in the pre-2011 UCMJ included willfully disobeying an order, then the 2011 amendment to § 848 of the UCMJ was the addition of meaningless surplusage.

Respondents offer no explanation as to why Congress added such surplusage to § 848, yet failed to add such language to § 850t(31).  In any event, again, Respondents' interpretation runs afoul of another bedrock principle of statutory construction.  Each word in a statute is presumed to have meaning and not simply to constitute meaningless surplusage.  *See*, *e.g.*, *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017).

In concluding, wrongly, that prior to 2011, the UCMJ (10 U.S.C. § 848), and therefore § 850t(31), already allowed for a finding of contempt based on willfully disobeying an order (under the guise that doing so constituted "disorder"), Respondents misread the pre-2011 rules governing courts-martial.  While correctly quoting the words of the discussion accompanying R.C.M. 809(a) in the 2008 Manual for Courts-Martial, Respondents mischaracterize their meaning.  Opp. at 43.  The discussion stated that "[r]efusal to appear or to testify is not punishable under Article 48."  Discussion, R.C.M. 809(a), Manual for Courts-Martial, United States (2008 ed.).  Respondents incorrectly assert that "the R.C.M. had instructed judges not to use their contempt power to punish failures to comply with the court-martial's orders, but rather to use the other powers made available by the UCMJ to prosecute non-compliance."  Opp. at 43. This is incorrect.  The provision did not tell military judges *not to use* their contempt power in

that situation; rather, it told them they *had no* contempt power in that situation.  That absence of contempt power was well-understood.  *See*, *e.g.*, S. Rep. No. 111-201, at 132-33 (2010); *see also* Petitioner's Supplemental Brief at 21-22 (citing authority going back to 1886 establishing the lack of contempt authority for refusing to obey a military judge's order).  In the Guantanamo military commissions, even after 2011, judges, like military judges in courts-martial and other military commissions prior to 2011, have no power to invoke contempt for failure to obey an order and instead must pursue other remedies for such conduct.  *See*, *e.g.*, Petitioner's Suppl. Br. at 22-23 (describing other remedies available to punish a military member's refusal to testify, such as a charge and trial by court-martial).

In sum, "disorder," used in § 950t(31) in conjunction with "riot," must mean the type of conduct that is tumultuous, contentious, or turbulent or threatens violence.  It cannot mean disobeying an order, something that Congress chose not to include in the definition of § 950t(31) contempt.[6]

## II.    There are no military commission system remedies Petitioner must exhaust.

Respondents argue that because Petitioner did not seek mandamus relief from the CMCR, he has failed to exhaust congressionally established review procedures and his habeas petition must be dismissed.  Opp. at 21-26.  This argument is without merit.

---

[6]  Moreover, to the extent that "disorder" could be arguably could be interpreted to extend to Brigadier General Baker's conduct of disobeying orders in the proceedings before Judge Spath, the term "disorder" did not put Petitioner on notice that such conduct would violate the statute.  Accordingly, Brigadier General Baker is entitled to have the contempt finding set aside under the rule of lenity.  *See*, *e.g.*, *United States v. Santos*, 553 U.S. 507, 513-14 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.  This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed.  It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.") (internal citations omitted); *see also United States v. Bass*, 404 U.S. 336, 347 (1971).

A.      **There is no on-going proceeding for which comity could require deference.**

The abstention of the habeas court in the face of ongoing military proceedings is a matter of comity, not jurisdiction. *Schlesinger v. Councilman*, 420 U.S. 738, 756 (1975). This doctrine is founded on the assumption that "the military court system established by Congress—with its substantial procedural protections and provision for appellate review by independent civilian judges—'will vindicate servicemen's constitutional rights.'" *Hamdan v. Rumsfeld*, 548 U.S. 557, 586 (2006) (quoting *Schlesinger*, 420 U.S. at 758). The doctrine does not apply where "there is no . . . ongoing proceeding," *Obaydullah v. Obama*, 609 F.3d 444, 448 (D.C. Cir. 2010), or where the proceedings bear an "insufficient conceptual similarity to state courts to warrant invocation of abstention principles," *Hamdan*, 548 U.S. at 588. Here, General Baker has sought one round of review and given the military a full and fair opportunity to review the contempt finding. He appealed Judge Spath's finding of contempt to the convening authority. The convening authority upheld the contempt finding. The convening authority's decision is final and not subject to further direct review. R.M.C. 809(d) ("The action of the convening authority is not subject to further review or appeal"). Thus, there is no ongoing proceeding to which deference must be given. *Obaydullah*, 609 F.3d at 444.

B.      **The CMCR does not have jurisdiction to hear a mandamus petition from Petitioner.**

Respondents note that under CMCR Rule 22(a), the CMCR may, in its discretion, entertain petitions for extraordinary relief from a military commission. Respondents, however, point to no jurisdiction-granting statute that would allow Petitioner to obtain mandamus relief from the CMCR. Respondents cite the All Writs Act. Opp. at 24, 25 n.19. But the All Writs Act is not a jurisdiction-granting statute. *Clinton v. Goldsmith*, 526 U.S. 529, 534-55 (1999). Respondents necessarily take the position that Petitioner has no right to a direct appeal to the

CMCR.  *See* R.M.C. 809(d).  If so, there is no potential appellate jurisdiction as to Petitioner and no basis to provide mandamus relief.

Respondents erroneously suggest that the CMCR would have jurisdiction to grant mandamus relief to Petitioner because doing so would be in aid of its potential appellate jurisdiction as to Mr. al Nashiri.  Opp. at 24-25.  Addressing the merits of the contempt finding against Petitioner would have no effect on Mr. al Nashiri.  Respondents erroneously argue that Brigadier General Baker was "held in contempt for refusing to take actions that would directly shape the defense Al-Nashiri receives for the duration of his military commission case."  Opp. at 24-25.  In fact, before finding Petitioner in contempt, Respondent Spath stated that Petitioner's "purported excusals" of three of Mr. al Nashiri's counsel "are null and void, and they have been since my written order on 16 October 2017 and my follow-on written order dated 27 October 2017."  Nov. 1, 2017 Tr. at 10064.  Under Respondent's own ruling, nothing that Petitioner did or failed to do on October 31, 2017 could have any effect on Mr. al Nashiri's defense because he had already invalidated Petitioner's excusal of counsel. Nor would any of Petitioner's challenges to the legality of the contempt finding against him have any impact on Mr. al Nashiri.  The CMCR's potential appellate jurisdiction over Mr. al Nashiri does not provide jurisdiction to grant extraordinary relief to petitioner.

R.M.C. 809 sets forth the procedure for an appeal of a contempt finding.  Pursuant to R.M.C. 809(d), the convening authority is the final appeal of a contempt finding made against a non-party to the military commission.  Brigadier General Baker is not a party to the military commission.  Accordingly, no further review in the military system is available to Brigadier General Baker at this time.  The convening authority has the ability to refer its affirmance of Judge Spath's contempt finding to the CMCR.  *See* 10 U.S.C. § 950f(c) ("The Court shall, in

accordance with procedures prescribed under regulations of the Secretary, review the record in each case that is referred to the Court by the convening authority under section 950c of this title with respect to any matter properly raised by the accused."). But it has not done so. *Cf. Obaydaullah*, 609 F.3d at 448 (holding that abstention is not necessary when a further military proceeding is "only a possibility and only at some unspecified time in the future").[7]

### C.   Even if the CMCR could entertain a mandamus petition from Petitioner, he is not required to exhaust that remedy in order to obtain relief from this Court.

Further, even if Brigadier General Baker were allowed to seek mandamus relief from the CMCR, he is not required to do so as a prerequisite to obtaining relief from this Court. The extraordinary proceedings suggested by the Government do not sufficiently resemble the ordinary operation of state courts to warrant deference under *Hamdan*. 548 U.S. at 587-88. The cases cited by the government in the state court context stand for the narrow proposition that mandamus should be sought when the habeas petition presents an issue that state courts have *never* had a chance to confront. *See U.S. ex rel. Johnson v. McGinnis*, 734 F.2d 1193, 1200 (7th Cir. 1984); *Seaton v. Kentucky*, 92 F. App'x 174, 175 (6th Cir. 2004) (citing *Brewer v. Dahlberg*, 942 F.2d 328, 340 (6th Cir. 1991), which held that state mandamus was necessary in the "rare" context when "a § 2254 action in federal court is the first challenge to be allowed to a state

---

[7]   Rule 809 provides that a single military judge, rather than a full military commission, may make a finding of contempt and determine the punishment. Rule 809(c). As Petitioner has argued previously, and addresses in Argument IV, below, the MCA does not provide a single military judge such authority. Only a full military commission can find someone guilty of a criminal offense and determine the punishment. Since Rule 809 is plainly inconsistent with the statute, the statute, not Rule 809, must be followed. If, however, the Court finds that Rule 809 is authorized under the statute and that a single military judge may make a contempt finding, then the path to appeal that finding is clear. There is a single appeal to the convening authority. Rule 809(d) ("The action of the convening authority is not subject to further review or appeal"). Brigadier General Baker is not required to appeal a matter to the CMCR that it has no substantive authority to decide and for which the procedural prerequisite, referral from the convening authority, has not been met. *See, e.g., Dooley v. Ploger*, 491 F.2d 608, 614-15 (4th Cir. 1974).

action"). Here, by contrast, the military system had a full opportunity to consider the issues in the ordinary review system prescribed by R.M.C. 809(d). As Respondents note, Brigadier General Baker raised the issues he argues in his Petition with the convening authority. Opp. at 9, 45. Brigadier General Baker has given the military a full and fair opportunity to hear and decide the issues. Comity does not require that Petitioner exhaust a second round of review by seeking extraordinary relief from the CMCR. *Cf. O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding, in § 2254 actions, that prisoners need only "invok[e] one complete round of the State's established appellate review process"); *See also id.* at 347 ("'state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past.'"); *Walker v. Zant*, 693 F.2d 1087, 1088 (11th Cir. 1982) ("The exhaustion requirement, however, does not require the prisoner to seek collateral review from the state judiciary of the same issues already raised on direct appeal. *Cobb v. Wainwright*, 666 F.2d 966, 969 n. 3 (5th Cir.), *cert. denied*, 457 U.S. 1107, 102 S. Ct. 2906, 73 L. Ed. 2d 1315 (1982); *Burton v. Oliver*, 599 F.2d 49, 50 (5th Cir. 1979).").

III.    **Petitioner's habeas petition is not moot.**

    A.    **Continuing collateral consequences are presumed because petitioner challenges a finding of guilty to a criminal offense.**

Respondent Spath found that Petitioner committed what the United States Code expressly defines as a crime. *See* 10 U.S.C. § 950t. The convening authority approved that finding. Petitioner's supplemental brief established why 10 U.S.C. § 950t(31) is necessarily a criminal contempt provision, Petitioner's Suppl. Br. at 9-10, and Respondents have not contested the point that the contempt finding was criminal.

As the Supreme Court has stated, "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong punishable by fine or imprisonment or both." *Bloom v. Illinois*, 391 U.S. 194, 201 (1968).   "[C]onvictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same." *Id.*

Under controlling Supreme Court precedent, a court will "presume that a wrongful criminal conviction has continuing collateral consequences." *Spencer v. Kemna*, 523 U.S. 1, 8 (1998).  Respondents argue that the presumed-prejudice rule should not be extended.  Opp. at 11. Here, however, no extension is necessary; Petitioner has been found to have committed a criminal contempt, "a crime in the ordinary sense" punishable by a fine, imprisonment, or both. Accordingly, under governing Supreme Court case law, continuing collateral consequences are presumed.

The government's argument to the contrary rests on *Gul v. Obama*, 652 F.3d 12 (D.C. Cir. 2011).   But that case is inapposite—the D.C. Circuit rested its conclusion that the presumption did not apply in large measure on the fact that the "litigation involve[d] individuals seized on a battlefield and [then] in the custody of a foreign sovereign," thus threatening to "infringe upon the domain of the branches of government responsible for the external relations of the Nation." *Id.* at 17.  No such concerns are triggered here, where the military commission has imposed criminal penalties on a United States citizen.  Thus, the presumption recognized in the context of domestic criminal law retains its full force in Brigadier General Baker's case.  *See Spencer*, 523 U.S. at 8.

Because of that presumption, there is no need to continue to an analysis of whether Petitioner has demonstrated such consequences.   The record here, however, unquestionably satisfies that alternative basis for continuing habeas jurisdiction as well.

16

**B.      Petitioner has demonstrated continuing collateral consequences from the contempt finding.**

Respondents attempt to deny the undeniable: being found in contempt will produce ongoing collateral consequences for a lawyer and for a military officer.

Contrary to the Respondents' argument, *see* Opp. at 14-15, finding continued habeas jurisdiction here is consistent with the Supreme Court's holding in *Lane v. Williams*, 455 U.S. 624 (1982).  In *Lane*, the Court recognized that in the context of an ordinary criminal conviction, a habeas petition "is moot only if it is shown that there is *no possibility* that any collateral legal consequences will be imposed on the basis of the challenged conviction."  *Id.* at 632 (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968) (emphasis added)).  In *Lane*, the Court held that this approach did not apply in the context of a parole violation, but it did not purport to displace it for criminal convictions.  *Id.* at 633; *see also Oyler v. Allenbrand*, 23 F.3d 292, 294 (10th Cir. 1994) (recognizing that the *Sibron* standard survives *Lane* for criminal convictions).  Nor did *Spencer*, which also addressed a parole revocation, change the law related to criminal convictions.  523 U.S. at 3.

The *Lane* Court also did not rule out the possibility that decisions involving some element of discretion *could* form the basis of collateral consequences.  455 U.S. at 633.  The Court simply recognized that future decision-makers were "more directly influenced by[ ] the underlying conduct that formed the basis for the parole violation."  *Id.* at 633.  And in *Lane*, in stark contrast to the situation here, the petitioners had "never attacked, either on substantive or procedural grounds, the finding that they violated the terms of their parole," meaning that once they were released, they "obtained all the relief they sought" "[t]hrough the mere passage of time."  *Id.*

Because this case deals with Brigadier General Baker's underlying criminal conviction, rather than a violation of parole or similar follow-on proceeding, he need only establish that there is a "possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron*, 392 U.S. at 57; *accord United States v. Fadayini*, 28 F.3d 1236, 1241 (D.C. Cir. 1994). But even if the Court were to apply *Lane*, Brigadier General Baker would only need to show that future decision-makers are likely to be "directly influenced" by his contempt conviction.[8]

Petitioner's supplemental brief established myriad ways in which he will suffer continuing collateral consequences as a result of the legally erroneous contempt finding. *See* Petitioner's Suppl. Br. at 10-14. Since that filing, however, one specific continuing collateral consequence has manifested itself. Petitioner has been officially notified that the Commandant of the Marine Corps considers the contempt proceedings and the contempt finding to "constitute potentially credible information of an adverse nature." Appendix Q ¶ 3. The summary of the "credible information of an adverse nature" includes the contempt finding, the resulting sentence, and the significant media attention that the contempt finding and the resulting confinement received. Appendix R ¶ 3. The prejudice of such information being considered by the promotion board that will meet on February 7, 2018 would be severe.

---

[8]  *Idema v. Rice*, 478 F. Supp. 2d 47 (D.D.C. 2007), another case on which Respondents rely (Opp. at 14-15), is also inapposite. In that case, four individuals sought habeas relief based on their incarceration in Afghanistan. At the time of the petition, three of the petitioners had been released and two of the three did not even suggest that there were collateral consequences. *Id*. at 51-52. Accordingly, the court held that their habeas claims were moot. *Id*. The third petitioner alleged that he suffered two collateral consequences as a result of his imprisonment in Afghanistan; first, that his employment prospects had been destroyed and second, that he was denied "core" parental rights. *Id*. The court held that because it "had no power to overturn the Afghan conviction, declare it void, or in any way affect the discretionary decisions of prospective employers or family court judges[,]" the habeas claim was moot. *Id*. Unlike in *Idema*, this Court *does* have the power to "overturn that conviction, declare it void, or in any affect the discretionary decisions" of the military that both imposed the penalty and will determine the consequences.

The prejudice that Petitioner suffers from the legally erroneous contempt finding is tangible; in fact, Petitioner was required to "sign and return" to the Commandant of the Marine Corps a tangible manifestation of that prejudice.  Appendix Q ¶ 5.  Moreover, unlike in *Lane*, here, that prejudice is "susceptible to judicial correction."  Opp. at 14 (citing *McBryde v. Comm. to Review Cir. Council Conduct & Disability Orders of the Judicial Conf. of the U.S.*, 264 F.3d 52, 57 (D.C. Cir. 2001)).  Petitioner has challenged the contempt finding before this Court.  Petitioner's Suppl. Br. at 33.  Vacating the contempt finding would eliminate the "substantiated adverse finding or conclusion from an officially documented investigation or inquiry" that forms the basis for the "credible information of an adverse nature."  *See* Appendix Q ¶ 2.  Without the legally erroneous contempt finding, there would be no "credible information of an adverse nature" as that term is defined by SECNAV Instruction 1401.4A, CONSIDERATION OF CREDIBLE INFORMATION FOR AN ADVERSE NATURE BY GENERAL OR FLAG OFFICER SELECTION BOARDS, ¶ 6.a (14 Feb. 2007).[9]  Thus, in marked contrast with *Lane*, prejudice arises wholly from the November 1, 2017 contempt *finding* (not the alleged underlying conduct) and would not result from the underlying events that occurred on October 31, 2017.

Moreover, Respondents commendably note that since *Lane*, Courts of Appeals have repeatedly held that the possibility of professional disciplinary action is sufficient to establish ongoing collateral consequences.  Opp. at 15 n.11 (citing *Nakell v. Att'y Gen. of N.C.*, 15 F.3d 319, 323 (4th Cir. 1994); *Zal v. Steppe*, 968 F.2d 924, 926 (9th Cir. 1992), *as amended* (July 31, 1992)).  Here, the convening authority expressly forwarded "*the findings* and the record of proceedings" for an administrative ethics review.  Appendix L to Petitioner's Supplemental Brief (emphasis added).  Accordingly the very kind of continuing collateral consequence that the

---

[9]  https://doni.documentservices.dla.mil/Directives/01000%20Military%20Personnel%20Support/01-400%20Promotion%20and%20Advancement%20Programs/1401.4A.pdf.

Courts of Appeals addressed in *Nakell* and *Zal* is present here.  That itself is sufficient to satisfy the alternative basis for habeas relief.

IV.     **The Military Commissions Act of 2009 forbids a military judge from exercising unilateral contempt power.**

A.     **Section 950t(31) requires contempt to be tried before a full military commission.**

As set forth above, even if Judge Spath had the unilateral authority to make a finding of contempt, the record simply does not support his finding.  However, there is an additional independent reason for this Court to reverse Judge Spath's finding:  he lacked the statutory authority to make such a finding.  Respondents incorrectly maintain that "Congress did not specify how a military commission was to exercise its contempt authority."  Opp. at 27.  On the contrary, Congress expressly provided that "[n]o person may be convicted by a military commission under this chapter of *any offense*, except [by a guilty plea] or by concurrence of two-thirds of the primary members present at the time the vote is taken."  10 U.S.C. § 949m(a) (emphasis added).  Congress then included contempt as one of 32 "offenses . . . triable by military commission under this chapter."  10 U.S.C. § 950t.  The plain language is clear: contempt is an "offense" and a military commission military judge never has the power to enter a contested conviction for any offense.

Respondents' central argument is that the Military Commissions Act of 2006 did not preclude a military judge from exercising unilateral contempt power.  Opp. at 28-29.  But Petitioner was not found in contempt under the Military Commissions Act of 2006; rather, he was found in contempt under the Military Commissions Act of 2009, whose plain language does clearly prohibit a military judge from exercising unilateral contempt power.  Under the MCA of 2006, crimes triable by military commission were enumerated under 10 U.S.C. § 950v.  Section

950v did not include contempt, perjury, or obstruction of justice. These offenses appeared in 10 U.S.C. § 950w. Under the MCA of 2009, however, contempt, as well as perjury and obstruction of justice, were added to the list of offenses triable by military commission. These offenses are now codified under 10 U.S.C. § 950t, as 10 U.S.C. § 950t(31) and (32), respectively.[10]

Respondents seek to rely on Congress's inclusion of the permissive words "A military commission under this chapter may try offenses" in § 950t(32), but not in § 950t(31), to argue that obstruction and perjury may be tried by a military commission, but that contempt may not be. Opp. at 29. Respondents overlook the fact that § 950t includes an introductory provision providing that all of the offenses under that section "shall be *triable* by military commission." 10 U.S.C. § 950t (emphasis added). The dictate that § 950t offenses shall be triable by military commission is not, as Respondents argue, confined to the title of the § 950t (*see* Opp. at 32), but is a plain mandate within the statute itself, a mandate that applies to each and every one of its subparts, including § 950t(31). Thus, under Respondents' own argument, Congress clearly signaled that "the voting requirements that are part of the 'Trial Procedure' subchapter of

---

[10] That the Military Commissions Act of 2009 might apply differently than the Military Commission Act of 2006 is not surprising. On the contrary, courts will "assume from statutory amendments a purpose to change existing law." *Gill v. Villagomez*, 140 F.3d 833, 836 (9th Cir. 1998). Respondents attempt to escape from the Military Commission Act of 2009's plain language by resorting to an analysis based on the Military Commission Act of 2006. Opp. at 28-32. Respondents' argument is incorrect for the reasons stated in both Petitioner's supplemental brief and elsewhere in this reply, but this Court should not even consider that argument. Statutory construction "begins 'with the language of the statute itself,' and that 'is also where the inquiry should end[' where] 'the statute's language is plain.'" *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). Here, Respondents seek to use extra-textual sources not to resolve an ambiguity, but to create ambiguity where none exists – an approach the Supreme Court has rejected emphatically. *See, e.g., Milner v. Dep't of the Navy*, 562 U.S. 562, 572 (2011) ("Those of us who make use of legislative history believe that clear evidence of congressional intent may illuminate ambiguous text. We will not take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language."); *id.* at 574 ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it.").

Chapter 47A" apply to contempt findings when it provided that contempt offenses are "triable by military commission."[11]

Moreover, the introductory language in § 950t belies Respondents' argument that the Military Commissions Act of 2009 merely changed "the location of the contempt provision in Chapter 47A . . . without any change to the provisions themselves." Opp. at 32. In addition to moving the provision's location and changing its title, the Military Commissions Act of 2009 amended the contempt provision by subjecting it to the language providing, "The following offenses shall be triable by military commission under this chapter at any time without limitation." *Compare* 10 U.S.C. § 950t *with* Military Commissions Act of 2006, Pub. L. No. 109-366, § 3, 120 Stat. 2600, 2630 (enacting 10 U.S.C. § 950w(b)).

Respondents also compare the contempt provision in the Military Commissions Act of 2009 with that of the UCMJ, *see* Opp. at 29-30, but overlook the key distinction. Congress did not enact the UCMJ's contempt provision as a punitive article; the Military Commissions Act of 2009 does include contempt within § 950t, its equivalent of the punitive articles. If contempt were in Article 84 of the UCMJ, instead of Article 48, it would be subject to Article 52's requirements. *See* 10 U.S.C. § 852. While Congress did not establish contempt as a substantive offense under the UCMJ, it expressly did so under the Military Commissions Act of 2009. *See* 10 U.S.C. § 950t. That distinction renders the Rules for Courts-Martial and military justice case

---

[11] Further, the "Perjury and obstruction of justice" subsection (§ 950t(32)) is the *only* provision in 10 U.S.C. § 950t that uses the words "may try." Thus, the plain language of 10 U.S.C. § 950t suggests no more an intention to omit contempt under § 950t(31) from the Military Commissions Act of 2009's trial procedures than to omit such offenses as murder of protected persons, rape, or spying. *See* 10 U.S.C. §§ 950t(1), 950t(21), 950t(27). All of those offenses are subject to section 950t's introductory language, making them "triable by military commission." So, too, is § 950t(31)'s contempt provision.

law inapposite to contempt voting requirements in the military commissions system.  *See* Opp. at 30.[12]

> **B.**     *Chevron* **deference is inapplicable where, as here, the statute being construed is unambiguous.**

The government claims that the R.M.C.'s constitute an interpretation of the Military Commissions Act that is entitled to *Chevron* deference.  Opp. 35-37.  That proposition is flawed in multiple ways.

*Chevron* only applies where Congress has delegated to an agency "the authority to speak with the force of law."  *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001).  Here, Congress has not delegated to the Secretary of Defense the power to interpret the MCA.  The relevant provision only authorizes the Secretary to make "[p]retrial, trial, and post-trial procedures . . . for cases triable by military commission."  10 U.S.C. § 949a(a).  First of all, granting the Secretary authority to make rules governing offenses tried by military commission does not confer authority to *exempt* certain offenses from military commission altogether, as the Government has sought to do here.  Second, creating a set of procedural rules is a separate exercise from issuing interpretations of the meaning of statutes to which federal courts must defer.

---

[12]  Respondents argue that Congress could not have intended through the MCA to risk substantial prejudice to the accused by requiring that a military commission, rather than a single military judge, resolve contempt issues.  Opp. at 32.  Yet, no such prejudice flows from establishing contempt as a substantive punitive offense and requiring it to be tried before a military commission.  A military commission can, and often does, hear multiple charges against a defendant and doing so does not presume prejudice.  Where there is prejudice, the charges can be severed and heard before different military commissions.  *See* RMC 905(b)(5) and RMC 906(b)(9) (motions to sever charges). In any event, the argument has no application here.  Respondents argue that a non-litigant, non-enemy combatant, such as Brigadier General Baker, can be found in criminal contempt.  There is no military commission otherwise convened against him that would somehow be prejudiced by trying a contempt charge against him.  If, as Respondents argue (Opp. at 31), a judge-alone contempt regime is preferable to one in which a military commission's members are the contempt triers of fact and sentencing authority, then Congress should amend the Military Commissions Act of 2009.  Respondents' policy preference does not warrant construing the statute in a manner inconsistent with its plain meaning. *Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning [a] statute's purposes could not overcome" clarity "in the statute's text.").

The cases cited by the government do not support the deference it claims. The two Supreme Court cases cited by the Government involved constitutional objections to specific rules; there was thus no question of deference on questions of statutory interpretation. *See United States v. Schaeffer*, 523 U.S. 303, 308-309 (considering an evidentiary rule was constitutional); *Loving v. United States*, 517 U.S. 748, 773-74 (1996) (considering whether certain R.C.M. ran afoul of the non-delegation doctrine). And *United States v. Wilson*, 76 M.J. 4 (C.A.A.F. 2017), likewise does not mention *Chevron* at all. The cases thus do not address whether the delegation to the Secretary included the authority to interpret the MCA or the UCMJ, much less whether the Rules amounted to an interpretation of the MCA entitled to *Chevron* deference. Nor would it make sense for these delegations to include the power to interpret the MCA, given courts' refusal to accord agencies deference in their interpretation of criminal statutes. *See Crandon v. United States*, 494 U.S. 152, 177-78 (1990) (Scalia, J., concurring in the judgment).

And there is no basis for inferring a delegation of lawmaking authority here. As the Court recognized in *Mead*, a "very good indicator of delegation meriting *Chevron* treatment" is "express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings." 533 U.S. at 229. Here, Congress has expressly *exempted* military commissions from the notice and comment process. *See* 5 U.S.C. § 551(1)(F). And the Secretary has ignored repeated calls to use more formal, transparent procedures in promulgating the R.M.C. *See* Devon Chafee, *Military Commissions Revived: Persisting Problems of Perception*, 9 Univ. N.H. L. Rev. 237, 250 (2011). Under these circumstances, the R.M.C. cannot be understood as a delegation to the Secretary to speak with the force of law concerning the interpretation of the MCA.

In any event, *Chevron* is no help to the government here.  The first step in a *Chevron* analysis is for a court to determine whether there is an ambiguity in the statute.  *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984).  If "Congress has directly spoken to the precise question at issue . . . the court as well as the agency[] must give effect to the unambiguously expressed intent of Congress."  *Id.* at 843.  "The Court conducts this first part of the analysis without showing the agency any special deference."  *Nat'l Ass'n for Home Care & Hospice v. Burwell*, 142 F. Supp. 3d 119, 124 (D.D.C. 2014) (internal quotation marks omitted).  At this stage, a court will use standard tools of statutory construction.  *Id.*  For the reasons set out above, as well as in Petitioner's supplemental brief, a plain language analysis of the Military Commissions Act of 2009 unambiguously yields the conclusion that a military judge may not exercise contempt authority unilaterally.  That conclusion ends the statutory analysis without ever extending deference under *Chevron*.[13]

## CONCLUSION

For the foregoing reasons, as well as those set out in Petitioner's supplemental brief, this Court should grant the petition and vacate Respondent Spath's unlawful contempt finding.

---

[13]  Additionally, as Petitioner has briefed previously, he was denied due process, presenting yet another independent ground for relief.  Respondents have no authority for the proposition that only a "substantial[]" delay makes summary contempt inappropriate.  The point of the exception for summary contempt is to allow conduct in the "presence of the judge" to be "*instantly* suppressed and punished."  *In re Oliver*, 333 U.S. 257, 275 (1948) (emphasis added) (internal quotation marks omitted).  There is no basis for thinking that a one-day delay is acceptable but not a longer one, and no principled way to draw a line between how long a delay is long enough for due process protections attach.  Rather, the due process exception for summary contempt is confined to contemptuous conduct in the presence of a judge that must be instantly punished.  Finally, as previously briefed, Judge Spath had no personal jurisdiction over Petitioner.  As previously briefed, MCA military commissions may be used only for enemy combatants, not United States citizens.  If, in fact, Petitioner committed contempt, as noted above, numerous avenues to address such conduct are available.  Trial by military commission, however, is not one of them.

Respectfully Submitted:


_____/s/ Barry J. Pollack_____
Barry J. Pollack (D.C. Bar #434513)
Addy R. Schmitt (D.C. Bar #489094)
MILLER & CHEVALIER CHARTERED
900 16th Street, N.W.
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: bpollack@milchev.com
        aschmitt@milchev.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 17th day of January, 2018, a true and genuine copy of the **PETITIONER BRIGADIER GENERAL BAKER'S MOTION TO FILE APPENDIX R TO HIS REPLY TO RESPONDENTS' OPPOSITION TO PETITIONER'S SUPPLEMENTAL BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR HABEAS RELIEF UNDER SEAL** was sent via electronic mail to the following:

> Andrew I. Warden
> U.S. Department of Justice
> Federal Programs Branch
> andrew.warden@usdoj.gov
>
> Michael Hendry Baer
> U.S. Department of Justice
> Federal Programs Branch
> michael.h.baer@usdoj.gov
>
> Terry Marcus Henry
> U.S. Department of Justice
> Federal Programs Branch
> terry.henry@usdoj.gov

/s/ Barry J. Pollack