IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN G. BAKER,<br>Brigadier General, United States Marine Corps,<br><br>*Petitioner*,<br><br>v.<br><br>VANCE SPATH<br>Colonel, United States Air Force, *et al.*,<br><br>*Respondents*. | Civil Action No. 17-CV-2311 (RCL) |

**RESPONDENTS' RESPONSE TO PETITIONER'S MOTION
FOR EXPEDITED CONSIDERATION**

Petitioner Brigadier General John G. Baker has filed a motion to expedite consideration of his petition for writ of habeas corpus. *See* Mot. to Expedite Consideration, ECF No. 19; *see also* Pet'r's Reply Br. and Request for Expedited Consideration ("Pet'r's Reply Br."), ECF No. 17. In arguing that expedition is warranted, BGen Baker relies principally on new information about collateral consequences he allegedly will suffer. *See* Pet'r's Reply Br. 3-4. Specifically, he claims that a selection board "imminent[ly]" will consider a summary of the events that resulted in Respondent Military Judge Colonel Vance Spath's decision to hold BGen Baker in contempt. *Id.* at 3. But this information does not provide any basis for granting habeas relief or accelerating the consideration of BGen Baker's petition. In fact, it confirms what Respondents argued in their opposition to BGen Baker's supplemental brief: that the consequences BGen Baker relies on to establish this Court's jurisdiction are "too speculative" and "at least as likely to be triggered by BGen Baker's underlying conduct—his flouting of military commission orders—as by the contempt finding that BGen Baker seeks to vacate." Resp'ts' Opp. to Pet'r's Suppl. Br. ("Resp'ts'

1

Opp. Br.") at 2, ECF No. 16. Accordingly, the new information provided in BGen Baker's reply brief does not demonstrate the existence of collateral consequences establishing this Court's jurisdiction and warranting expedited consideration of the petition.[1]

As Respondents explained in their supplemental brief, a court cannot exercise jurisdiction over a habeas petition after the petitioner has been released from custody unless the petitioner will suffer "some concrete and continuing injury," *i.e.*, "some 'collateral consequence' of the conviction." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *see also* Resp'ts' Opp. Br. 10. Such consequences generally must be "civil disabilities" imposed by law, rather than "non-statutory consequences"—such as those affecting a petitioner's "employment prospects"—or consequences that are preceded by "discretionary decisions." *Lane v. Williams*, 455 U.S. 624, 632 (1982); *see also* Resp'ts' Opp. Br. 14-16.[2]

Applying these principles to the new information that BGen Baker cites in his reply brief reinforces that he has failed to meet his burden of demonstrating that his habeas petition is not moot, *see In re Petitioners Seeking Habeas Corpus Relief in Relation to Prior Detentions at*

---

[1] This brief addresses only the arguments and new information from BGen Baker's reply brief that pertain to his motion for expedited consideration—the briefing for which he consolidated with his reply brief. *See* Mot. to Expedite Consideration, ECF No. 19.

[2] BGen Baker claims that sufficient collateral consequences should be presumed because Judge Spath determined that BGen Baker engaged in *criminal* contempt. *See* Pet'r's Reply Br. 16. BGen Baker does not dispute that applying the presumption of collateral consequences here would make this Court the first to extend the presumption to the context of an Article I military commission established under the Military Commissions Act of 2009, 10 U.S.C. §§ 948a-950t. Respondents, applying the Supreme Court's reasoning from *Spencer*, have explained why that extension is not justified. *See* Resp'ts' Opp. Br. 11-14. BGen Baker's only response on this point is to cite case law confirming that a state-court conviction for criminal contempt is, indeed, a criminal conviction. *See* Pet'r's Suppl. Br. 16 (citing *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)). But the question of whether criminal contempt is like other convictions is entirely separate from the question of whether convictions in a recently established Article I military commission should be presumed to have the same collateral consequences as convictions in state and federal court. On *that* issue, BGen Baker's brief is silent.

*Guantanamo Bay*, 700 F. Supp. 2d 119, 129 (D.D.C. 2010), *aff'd sub nom. Chaman v. Obama*, No. 10-5130, 2012 WL 3797596 (D.C. Cir. Aug. 10, 2012), and of showing that those circumstances warrant expedited consideration of the petition.  The new information BGen Baker identifies is a notification dated January 3, 2018, that there is "potentially credible information of an adverse nature" about him that may be presented to a selection board.  Pet'r's Reply Br., App. Q ¶ 3, ECF No. 17-2.  The board will meet on February 7, 2018, to recommend a candidate to serve as the Staff Judge Advocate to the Commandant of the Marine Corps.[3]  Pet'r's Reply Br., App. P ¶ 1, ECF No. 17-1.  Navy regulations aim to ensure that, as part of that selection process, the board is furnished with all "credible information of an adverse nature"—information that is defined as "[a]ny substantiated adverse finding or conclusion from an officially documented investigation or inquiry, or other official record or report."  SECNAVINST 1401.4A ¶¶ 1, 6.a(1).[4]  BGen Baker argues that because he has received notice of potentially credible adverse information, a "specific continuing collateral consequence"—one sufficient for this Court to exercise jurisdiction over his habeas petition—"has manifested itself."  Pet'r's Reply Br. 18.  That argument is meritless.

   First, BGen Baker has not established that it is the contempt finding itself, rather than his willful disregard for the military commission's authority, that serves as the basis for the "potentially credible information of an adverse nature."  Instead, he simply asserts that the adverse

---

[3]  The Staff Judge Advocate to the Commandant of the Marine Corps ("CMC") performs a statutorily-created role as the senior uniformed legal advisor to the Commandant, and his/her duties include overseeing and supervising the provision of legal support within the Marine Corps on behalf of the CMC   *See* Marine Corps Order 5430.2 ¶¶ 1.b.-d., available at http://www.marines.mil/Portals/59/MCO%205430.2.pdf

[4] SECNAVINST 1401.4A is available at https://doni.documentservices.dla.mil/Directives/01000%20Military%20Personnel%20Support/01-400%20Promotion%20and%20Advancement%20Programs/1401.4A.pdf.

information "was explicitly premised on the fact that Judge Spath found General Baker guilty of contempt." Pet'r's Reply Br. 3. But his support for that assertion comes from an "Adverse Information Summary" he received, which recounts *both* his underlying conduct and Judge Spath's decision to hold him in contempt. *See* Pet'r's Reply Br., App. R at 3-4;[5] *see also* App. Q at 2 of 3 (describing the document as an "Adverse Information Summary"). BGen Baker's brief ignores the first half of the summary, which finds, *inter alia*, that BGen Baker "refused" Judge Spath's orders "to rescind his excusal of civilian defense counsel and also be sworn in to testify" and that BGen Baker "question[ed] the judge's authority to direct him to affirmatively order the return of the counsel and contest[ed] the commission's jurisdiction over him with respect to the order to testify." App. R. at 3. Further, the "Adverse Materials" that triggered the notification process apparently contain the transcripts from the two days of military commission proceedings at issue—October 31, 2017, and November 1, 2017—along with accompanying exhibits. *See* Pet'r's Reply Br. 4 n.2 (describing enclosure (1) to Appendix Q). The fact that those transcripts constitute "Adverse Materials" reinforces that the totality of BGen Baker's behavior is likely to be evaluated, as opposed to only Judge Spath's contempt finding.

Together, these facts suggest there would still be "credible information of an adverse nature" about BGen Baker even if this Court were to vacate the contempt finding. After all, before he held BGen Baker in contempt, Judge Spath found that BGen Baker "willfully refused to obey the commission's order to testify" and "willfully refused to obey the commission's order to rescind [the] excusal of counsel." *United States v. Al Nashiri*, Unofficial/Unauthenticated Transcript

---

[5] BGen Baker has filed Appendix R under seal. *See* Sealed Mot. for Leave to File Doc. Under Seal, ECF No. 18. BGen Baker's counsel represented that he has no objection to Respondents quoting select language from Appendix R in this publicly filed brief, as BGen Baker has done in his brief. *See* Pet'r's Reply Br. 3-4.

4

("Tr.") at 10061 (Attachment C to Wells Decl., ECF No. 16-1).  Those factual findings are not in dispute in this case.  As such, even if this Court were to strip the label "contempt" from BGen Baker's conduct, there would still be findings, made on the record by a military commission judge, that he engaged in willfully insubordinate conduct and "caused a significant disorder to the [commission's] process."  *Id.* at 10063.  Those findings alone would seem to qualify as "substantiated adverse finding[s]" from an "official record."  SECNAVINST 1401.4A ¶ 6.a(1).  Similarly, the inclusion of the transcript from October 31 in the "Adverse Materials" reinforces that vacating the contempt finding likely would not eliminate the "credible information of an adverse nature."  October 31 is when BGen Baker engaged in contumacious conduct, but it was the day *before* Judge Spath held him in contempt.  *See* Tr. at 10015-10051 (Attachment B to Wells Decl.).  In sum, because this Court cannot erase the record of BGen Baker's conduct or Judge Spath's findings concerning that conduct, BGen Baker has failed to show that the Court can redress any injury from the "potentially credible information of an adverse nature."  *See McBryde v. Comm. to Review Cir. Council Conduct & Disability Orders of the Judicial Conf. of the U.S.*, 264 F.3d 52, 57 (D.C. Cir. 2001) (collateral consequences must be "susceptible to judicial correction").

Second, even if the contempt finding itself is the only reason that BGen Baker has received notice of potentially adverse information, the consequences he claims will result from that information are too speculative, and subject to too many intervening discretionary decisions, to support jurisdiction.

Before the potentially adverse information is submitted to the selection board, it must be reviewed by the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("ASN, M&R") to determine whether it is actually adverse.  App. Q ¶ 3.  Only if he reaches that conclusion

will the "Adverse Information Summary" be provided to the selection board, along with any response from BGen Baker. *Id.* ¶¶ 3, 4.

If the Assistant Secretary makes such a determination, then the selection board members would "consider" the adverse information and BGen Baker's response, but would retain full discretion as to whether to recommend BGen Baker for the position. SECNAVINST 1401.4A ¶ 8. That step would be only the first recommendation at issue—the Secretary of the Navy would in turn make a recommendation to the Secretary of Defense about whether to select BGen Baker for the position, and that recommendation would consider both the adverse information and "any other information available to [the Secretary of the Navy]." *Id.* ¶ 10.d. The Secretary of the Navy's recommendation—and, if applicable, any adverse information—would then be forwarded to the Secretary of Defense, who would have discretion to decide whether to recommend BGen Baker to the President. DoD Instruction 1320.04, Enclosure 3 ¶¶ 1.b(2), 1.b(2)(b), 1.b(6).[6] Finally, the President would retain ultimate discretion over whether to appoint, with the advice and consent of the Senate, BGen Baker as the Staff Judge Advocate to the Commandant of the Marine Corps. 10 U.S.C. § 5046(a).

At each of these four discretionary steps—the selection board's recommendation, the Secretary of the Navy's recommendation, the Secretary of Defense's recommendation, and the President's final decision—it is more likely that BGen Baker's actual conduct will influence the decisions, rather than the mere fact that Judge Spath chose to punish that conduct with a contempt finding. *See Spencer,* 523 U.S. at 16 (holding that the prospect of using the petitioner's parole revocation against him in a future criminal case was not a sufficient collateral consequence because

---

[6] DoD Instruction 1320.04 is available at http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/132004p.pdf.

"it is at least as likely that the conduct underlying the revocation, rather than the revocation itself . . . would be used"); *see also Lane*, 455 U.S. at 632-33 (emphasizing that "discretionary decisions that are made by an employer . . . are not governed by the mere presence or absence of a recorded violation of parole; these decisions may take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the parole violation").[7]

Moreover, as mentioned above, BGen Baker has already been notified that he has the opportunity to "submit any matters on [his] behalf," so that the potentially adverse information can be assessed "based on all the facts and circumstances, including [BGen Baker's] explanation." App. Q ¶ 4. BGen Baker also has the right to request that all or part of the "Adverse Materials" (the transcript and exhibits) be reviewed by the selection board. *Id.* ¶ 3.[8] The fact that BGen Baker had to "sign and return" an acknowledgment that he has received the potentially adverse information is not "a tangible manifestation of . . . prejudice." Pet'r's Reply Br. 19; *see also* App. Q ¶ 5. Rather, it is a manifestation of the elaborate selection process, which includes protections for BGen Baker's rights.

Finally, contrary to the representation he made in his supplemental brief, it appears that BGen Baker is not the senior officer that the selection board will consider. *See* Pet'r's Suppl. Br.

---

[7] BGen Baker attempts to distinguish *Lane* by noting that the petitioners there had "never attacked, either on substantive or procedural grounds, the finding that they violated the terms of their parole." Pet'r's Reply Br. 17 (quoting *Lane*, 455 U.S. at 633). But in *Spencer*, which also involved parole revocation, the petitioner *did* raise such a challenge, arguing in his habeas petition that "he had not received due process in the parole revocation proceedings." 523 U.S. at 5. And as reflected above, the Court in *Spencer* reached the same conclusion as the Court in *Lane*—that when a decision-maker's discretionary choice is likely to rest on a petitioner's underlying conduct, the adverse consequences flowing from that choice are insufficient for jurisdiction. *See id.* at 16.

[8] In addition to the ability to provide this information to the selection board, BGen Baker has the right to communicate in writing with the board and to submit matters "[he] deem[s] important for consideration." App. P ¶¶ 4.h.-4.j.

14, ECF No. 11 (describing BGen Baker as "the senior officer eligible for promotion"). Instead, he is listed as the "Junior Officer Above-Zone," and a different officer is listed as the "Senior Officer Above-Zone." App. P. ¶ 3.a. There may be additional officers in the "Above-Zone" category whose seniority falls somewhere between that of the "Senior Officer Above-Zone" and of BGen Baker. *See id.* ¶ 3. But in any event, seniority does not necessarily translate to a greater likelihood of selection. For instance, the "Above-Zone" category consists of officers who have been "previously considered" but not selected for the Staff Judge Advocate position. *See id.*[9] The selection board will also consider some individuals for the first time (defined as "in-zone" or "below-zone," depending on their time-in-grade). *Id.*

At bottom, BGen Baker is one of a number of candidates participating in a process that will result in the appointment of only one Staff Judge Advocate to the Commandant of the Marine Corps. Given the many factors likely to be at issue in the selection process (across multiple stages of review), there is no way to know how likely it is that BGen Baker will be selected. And more to the point, the prospect that the contempt finding itself will make or break that selection for BGen Baker, rather than any number of other factors (including his underlying conduct), is simply "too speculative to sustain the exercise of federal jurisdiction." *Gul v. Obama*, 652 F.3d 12, 18 (D.C. Cir. 2011).

For the foregoing reasons, BGen Baker has not provided any new information that supports the existence of collateral consequences from his contempt finding that would permit this Court to exercise jurisdiction over his habeas petition and require expedited consideration of the petition.

---

[9] BGen Baker was considered for the position on at least one other occasion. *See Convening of the FY15 U.S. Marine Corps Staff Judge Advocate to the Commandant of the Marine Corps Selection Board*, Marines (Aug. 7, 2013), http://www.marines.mil/News/Messages/Messages-Display/Article/895715/convening-of-the-fy15-us-marine-corps-staff-judge-advocate-to-the-commandant-of/.

Dated: January 30, 2018                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JENNIFER D. RICKETTS
Director

TERRY M. HENRY
Assistant Branch Director

*/s/ Michael H. Baer*
MICHAEL H. BAER
Trial Attorney (New York Bar No. 5384300)
U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Telephone:     (202) 305-8573
Facsimile:      (202) 616-8460
E-mail: Michael.H.Baer@usdoj.gov

*Counsel for Respondents*